364 So.2d 790 (1978)
PROVIDENT NATIONAL BANK, a National Banking Association, Appellant,
v.
THUNDERBIRD ASSOCIATES, a General Partnership, Southern General Corporation, a Corporation, and Southern Industrial Corporation, a Corporation, Appellees.
No. JJ-273.
District Court of Appeal of Florida, First District.
November 8, 1978.
*791 Mary Patricia C. Fawsett of Akerman, Senterfitt & Eidson, Orlando, Frederic W. Clark of Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellant.
*792 Arnold H. Slott of Glickstein, Crenshaw, Glickstein, Fay & Block, Jacksonville, for appellees.
BOYER, Judge.
We here consider an issue contended by all the parties to be novel and without precedent in Florida or elsewhere. Although several points are argued in the excellent and exhaustive briefs, the essential issue upon which the case turns is whether a deficiency judgment following a mortgage foreclosure may exceed the difference between the amount adjudged and secured by the final judgment of foreclosure and the amount for which the mortgaged property was sold at the foreclosure sale.
On April 28, 1975 Provident National Bank (Provident) filed a complaint in the Circuit Court of Duval County naming as defendants Thunderbird Associates, a general partnership (Thunderbird); Southern General Corporation (Southern General) and Southern Industrial Corporation (Southern Industrial). The complaint alleged, inter alia, that Thunderbird was the owner of a certain motel property in Duval County which was encumbered by a first mortgage held by First Federal Savings and Loan Association of Jacksonville (First Federal) and a second mortgage held by Provident; that Southern General was the original mortgagor designated in said second mortgage held by Provident; that Southern Industrial "may have or claim to have some interest in the property" by virtue of a certain additional mortgage alleged in the complaint to be inferior to Provident's second mortgage; that both the first and second mortgages and the notes secured thereby were in default; that substantial sums had been paid by Provident to cure defaults under the first mortgage held by First Federal and that "such sum together with all additional sums paid to cure defaults on said first mortgage and interest at the rate of fifteen per cent (15%) per annum are secured by plaintiff's second mortgage." The complaint prayed for the appointment of a receiver, an accounting and that if the sums found to be owing be not paid then Provident's second mortgage be foreclosed and the property be sold under the direction of the Court and that "out of the proceeds of said sale, the amounts due the plaintiff may be paid, so far as the same will suffice, and that, if a deficiency occur, the plaintiff be granted a decree therefor against such of the defendants as may be found liable or responsible for the mortgage debt."
In due course a final judgment was entered finding the plaintiff Provident to be entitled to $1,000,000.00 principal, interest to the date of the judgment, certain sums paid to First Federal to cure defaults under the first mortgage, interest on the latter amount, attorney's fees and costs; for a total sum of $1,429,493.66. The final judgment further provided that "[i]f the total sum with interest at the rate prescribed by law and all costs of this action accruing subsequent to this judgment are not paid within three days from this date" the property be sold by the Clerk "to the highest bidder" in accordance with F.S. 45.031.
Numbered paragraph four of the final judgment provided:
"Plaintiff, Provident National Bank, shall advance all subsequent costs of this action, including such fees and costs as this Court may subsequently award to the receiver, and plaintiff shall be reimbursed for them by the Clerk of this Court, if plaintiff is not the purchaser of the property at the sale. If plaintiff is the purchaser of the property, the Clerk of this Court shall credit plaintiff's bid with the total sum, together with interest and costs accruing subsequent to this judgment, or such part of said amount as may be necessary to pay the bid in full."
Provident was the only bidder at the foreclosure sale and bid the exact amount found to be owing by the final judgment, $1,429,493.66.
Following the foreclosure sale Provident filed a "motion for summary final judgment of deficiency". After various motions, including a motion to add Red Carpet Inns, Inc. as an additional party defendant, *793 a pleading entitled "amended complaint" was filed in the same proceeding (the foreclosure proceeding) wherein Provident was designated as plaintiff and Thunderbird and Red Carpet as defendants. Both defendants filed a "limited consent" consenting to the granting of Provident's motion to add Red Carpet as a party and to amend its pleadings. In Count I of said "amended complaint" Provident alleged, inter alia, the foreclosure of the mortgage; the amount bid by Provident at the foreclosure sale; that the fair market value of the property on the date of foreclosure "was substantially less than the amount of the final judgment rendered in this cause in favor of plaintiff, and was insufficient to satisfy the debt, in whole or in part, heretofore adjudged by this court to be due and owing from defendant Thunderbird Associates to Plaintiff"; that plaintiff had incurred various fees, costs and expenses subsequent to entry of the final judgment of foreclosure "in this cause of action in order to collect the debt owed by defendant Thunderbird Associates to plaintiff" and that plaintiff was obligated to pay its attorneys reasonable fees for their services. The prayer of said first count demanded a deficiency decree against Thunderbird "for the sums remaining due, owing and unpaid to plaintiff pursuant to the final judgment previously entered in this cause, plus costs and reasonable attorney's fees incurred by plaintiff pursuant to the terms of the second mortgage * * * ". The second count incorporated the allegations of the pertinent recitations in the first count and further alleged that Red Carpet had executed and delivered to Provident a guaranty agreement by which it unconditionally guaranteed to Provident the payment of principal, interest and other sums pursuant to the terms of the second mortgage note and to indemnify Provident for all costs, expenses and reasonable attorney's fees incurred in the collection or enforcement of said second mortgage note. It further alleged that in reliance on said guaranty Provident had advanced monies to or for the account of Thunderbird which Thunderbird had failed and refused to pay. The prayer of the second count demanded judgment against Red Carpet "for principal and interest and other sums due pursuant to the said second mortgage note and the second mortgage * * * for damages, costs and expenses, including reasonable attorney's fees, interest as allowed by law, and such other relief as the court deems proper."[1]
In due course Thunderbird and Red Carpet filed answers and the case was set for trial before the court.
At the trial the parties stipulated that on the date of the foreclosure sale the property had a fair market value of $4,242,000.00 and that there was owing on the first mortgage in favor of First Federal a sum in excess of $3,000,000.00 and that accordingly the difference between the fair market value and the balance owing on the first mortgage was considerably less than the amount of the successful bid at the foreclosure sale which was made by Provident. Provident sought to introduce evidence of certain equities, including but not limited to: (1) How many payments were made to Provident under the second mortgage and note; (2) Testimony as to the condition of disrepair of the property at the time it was abandoned without notice; (3) Testimony as to the large expenditures by Provident prior to entry of the final judgment of foreclosure to preserve the property; (4) Evidence of a required payment under the first mortgage made by Provident subsequent to the judgment of foreclosure but prior to the foreclosure sale; (5) Testimony as to advances made by Provident for first mortgage payments, working capital and renovations in mitigation of damages; (6) Evidence showing that Provident did not receive *794 any repayment of its loan except for the acquisition of the property at the foreclosure sale, which property was subsequently lost to the first mortgagee; and (7) Evidence that the defendants did not rely upon, suffer any detriment or change their position because of Provident's bid at the foreclosure sale. The trial judge excluded that evidence as irrelevant and immaterial.
Provident sought a deficiency of $404,927.22 and for costs and fees not reflected in the final judgment in the amount of $85,857.83.
The trial judge entered a final judgment finding that the difference between the fair market value of the foreclosed property on the date of sale and the balance owed on the first mortgage was less than the amount of Provident's successful bid; that plaintiff's reimbursable costs advanced pursuant to the final judgment[2] amounted to $41,189.64; and that certain costs[3] amounted to $49,874.07. He therefore concluded that there existed a deficiency in the sum of $49,874.07 since the date of sale and that said deficiency accrued interest at the legal rate of six per cent thereafter. Judgment was therefore entered against Thunderbird and Red Carpet, jointly and severally, for the sum of $49,874.07 plus interest from the date of sale to the date of said final judgment at the rate of six per cent per annum, plus attorney's fees and costs which were fixed in accordance with a stipulation among the parties.
Provident appealed arguing three points.[4]
The primary thrust of appellant's first point is that the trial judge erred in rejecting the evidence above mentioned[5] and, more importantly, in his holding that regardless of the actual fair market value of the property at the time of the foreclosure sale appellant was only entitled to a deficiency judgment for the difference between the amount owed on the mortgage and note as determined and secured by the final judgment of foreclosure and the amount for which the property sold at foreclosure sale.[6]
Regarding the rejected evidence, we hold that the learned trial judge was imminently correct.
The law is so well settled as to require no citation of authority that the issues to be tried are fixed by the pleadings. Once so fixed the issues may be changed only by (a) stipulation of the parties, (b) consent or acquiescence of the parties, (c) motion and order or (d) by amendment express or implied to conform to the evidence. (See Rule 1.190 Fla.R.Civ.P.) An examination of the pleadings in this case, relevant portions of which have been hereinabove quoted or mentioned, reveals that there was no attempt to raise such issues prior to the entry of the final judgment of foreclosure nor was any proof offered to support such issues. No attack having been made on the final judgment of foreclosure,[7] upon it becoming final the obligations between the parties, insofar as the mortgage foreclosed was concerned, became fixed. Perhaps had the pleadings or proofs prior to entry of the *795 final judgment of foreclosure supported the claims belatedly urged and rejected by the trial judge at the trial on the deficiency claim, particularly the claim for "waste"[8], advances[9], etc., such items may well have properly been included in or secured by the final judgment of foreclosure. However, such was not the case. The final judgment, as already above observed, secured only the amount found thereby to be owing to the plaintiff, Provident, plus sums advanced for "costs of this action", fees, receiver's costs, documentary stamps and interest at the legal rate, all of which were taken into consideration and due credit given by the trial judge in fixing the amount of the deficiency judgment. The final judgment of foreclosure having become final, and no attempt to amend it having been made,[10] the trial judge presiding at the deficiency trial would have been in error to have considered and taken into account matters which predated the final judgment of foreclosure,[11] all of which were resolved upon the entry of the final judgment of foreclosure.
The more intriguing issue presented by appellant's first point relates to the effect of appellant's successful bid at the foreclosure sale. On that issue no authority from Florida nor elsewhere has been cited. Appellant cites numerous authorities from Florida and other jurisdictions holding that in post sale deficiency proceedings the amount for which the mortgaged property sold at foreclosure sale is only one element to be considered in determining its value. Resting on that foundation appellant argues that since sub judice the parties stipulated that on the date of sale the mortgaged property had an actual true market value of substantially less than the amount of appellant's bid[12] then in determining the amount of deficiency appellant should not be bound by the amount it bid and for which it purchased the property at the foreclosure sale, but that the true market value, rather than the foreclosure sale high bid, should be the benchmark.
We reject appellant's thesis. The amount owed on the mortgage and note secured thereby to Provident was fixed by the final judgment of foreclosure.[13] The amount for which a mortgaged property sells at foreclosure sale, whether to the mortgagee or to a stranger, is (less such costs and expenditures as provided in the final judgment of foreclosure) applied to the debt as fixed by the final judgment of foreclosure. Although the amount for which mortgaged property sells at a properly conducted foreclosure sale is not conclusive as to the value of the property nor the right to a deficiency judgment, the deficiency may not exceed the difference between the amount for which the property so sold and the amount of the indebtedness secured by the final judgment of foreclosure.[14] Although, *796 as already recited, we are acquainted with no precedent directly on point we find City Building Corporation v. Farish, 292 F.2d 620 (5th Cir.1961) analogous and persuasive. That case involved a dispute between a trustee in bankruptcy and the purchaser of property sold at a distress sale under court order. The appellant (judgment holder and purchaser at the distress sale) advanced there the identical argument made by appellant here. Rejecting the argument, the court said:
"It urges that the only benefit to it was its realization upon the sale of the property and it should not be required to account for an amount in excess of the value which it received. No authorities are cited to support the rule for which the appellant contends. It urges that it should be relieved from the effect of what it claims was an overbid made in keeping with a custom of creditors to bid at execution sales the amount of the judgment plus costs. Plausible as this entreaty may, at first blush, appear, it cannot be sustained upon any legal theory. A creditor, who causes a debtor's property to be sold, and becomes the purchaser at a judicial sale, stands in the same position at and after the sale of the property as would a stranger whose bid was accepted. City of Sanford v. Ashton, 131 Fla. 759, 179 So. 765. Since the creditor acquires the same rights as a high bidding stranger would acquire, it is proper to impose upon it the same duties and obligations as are cast upon a third party successful bidder and to hold it to the amount of its bid. The appellant is saying in effect, that it did not get value received for its bid. Its contention is that the goods which it bought were an inadequate consideration for the amount which it bid. In the absence of fraud, misconduct, mistake, accident, surprise or irregularity, a judicial sale will not be set aside where the consideration for the property sold is inadequate. City of Sanford v. Ashton, supra; 33 C.J.S. Executions § 233, p. 492. We think the same principle should apply where the claim is made that the consideration for the bid price is inadequate." (292 F.2d at pages 622-623)
In arguing its second point, Provident points out that after entry of the final judgment of foreclosure, but before the date of sale, it made a substantial payment to the first mortgagee to protect the security for its mortgage in order to avoid default in the first mortgage. It also points out that the terms of the second mortgage and note secure such payments. The trial judge at the deficiency trial rejected such evidence on the ground that such payment was note secured by nor contemplated by the final judgment of foreclosure and that therefore it could have no effect upon the amount of deficiency. We agree. As we have already said in discussing the preceding point, the amount owed under the foreclosed mortgage and note secured thereby was fixed by the terms of the final judgment of foreclosure. Provision was made in that final judgment for amounts theretofore paid to cure defaults in, and to avoid future defaults in, the first mortgage. There was no mention in that final judgment of any further payments to be paid to the first mortgagee, nor were same contemplated or secured thereby. Whether or not a motion to amend the final judgment of foreclosure to include the additional payment made by Provident to the first mortgagee prior to the date of sale would or should have been granted we need not now speculate because the record reveals no such undertaking. The learned trial judge did not err in rejecting that evidence and in failing to give credit for such payment in determining the amount of the deficiency judgment.
Finally, the trial judge found in the final judgment determining the deficiency that both Thunderbird and Red Carpet were liable only for interest at the legal rate, viz: Six per cent per annum. Provident urges that ruling as error.
*797 The foreclosed mortgage and the note secured thereby provided for interest upon default at the rate of fifteen per cent per annum. Red Carpet, in order to induce Provident to make the loan secured by the note and mortgage, had entered into a guaranty agreement whereby it did "irrevocably and unconditionally guarantee to the Bank the prompt payment of the principal, interest and other sums payable under the * * * promissory note and mortgage * * * and observance by Thunderbird Associates of the terms, conditions, covenants, stipulations and agreements of the above identified mortgage * * *". The guarantor (Red Carpet) further agreed to "indemnify and save harmless the Bank from and against all reasonable costs, expenses and attorney's fees that may be incurred by the Bank in connection with the collection or enforcement of said promissory note [and] * * * mortgage * * * ". Harkening back to the "amended complaint"[15] in which Thunderbird and Red Carpet were named as parties defendant. Red Carpet had not theretofore been a party and was not therefore a party to the action at the time of entry of the final judgment of foreclosure. Count I of the amended complaint was against Thunderbird only and recited in the first paragraph that "[t]his is an equitable action in a mortgage foreclosure proceeding for a deficiency decree * * *". The prayer of that count likewise requested a deficiency decree only against Thunderbird. As between Provident and Thunderbird, the final judgment of foreclosure effectively resolved their controversy. It declared the amount of the debt and secured other obligations for which Provident was entitled to credit. The amount for which the property sold at foreclosure sale was equal to the amount of the adjudicated debt, therefore the only remaining amounts for which Provident was entitled to be compensated were those items referred to in and secured by the final judgment of foreclosure. The trial judge entered a deficiency judgment for those amounts plus interest at the legal rate of six per cent, which he was required to do since those sums had been reserved in and were secured by the final judgment of foreclosure. In so doing he did not err.
The second count of the amended complaint was against Red Carpet only. The first paragraph of that count recited that "[t]his is an action for damages which exceed $2,500.00." The remaining paragraphs clearly reveal that that count was founded upon the guaranty agreement and the prayer, making no mention of a deficiency, demands judgment against Red Carpet "for principal and interest and other sums due pursuant to the second mortgage note and the second mortgage as supplemented, for damages, costs, and expenses, including reasonable attorney's fees, interest as allowed by law, and such other relief as the court deems proper". The allegations of that count are exactly the same as they would reasonably be expected to have been had the amended complaint been filed in an independent and separate action at law on the guaranty. The propriety of considering a two count complaint in a post judgment foreclosure action wherein each count purports to state separate and distinct causes of action against separate and distinct parties has not been presented as an issue in this appeal and will therefore not be addressed by us. Neither do we address the propriety of asserting a "pure law action" in a post judgment equitable foreclosure proceeding.[16] We must, therefore, since no procedural issues are presented for resolution, consider the case in the light of the actual pleadings as reflected by the record. In so doing we again note that Red Carpet was not an original party to the action and that the claim against it is founded on its guaranty. The guaranty guaranteed, inter alia, payment of the second mortgage and note, both of which required the payment of interest at the rate of fifteen per cent per annum in the event of default. There was unquestionably a default. It necessarily *798 follows therefore that as against Red Carpet, who was not a party to the final judgment of foreclosure, interest accrued at the rate of fifteen per cent per annum as to those items contemplated by the provisions of the guaranty agreement. We accordingly reverse and remand to the trial court for that determination.
In order to facilitate disposition of the case on remand, and to settle one of the arguments repeated in the briefs, we hold that Red Carpet, on its guaranty, cannot be held liable for any part of the indebtedness adjudicated by the final judgment of foreclosure[17] for the simple reason that that sum was "paid" by the bid of the equivalent amount for which the property was sold at the foreclosure sale.
Neither may Red Carpet be held liable under the terms of its guaranty for the payments made by Provident to First Federal as payments on the first mortgage. Our reasoning in that regard as already recited in discussing the other points involved in this appeal are equally applicable to Red Carpet.
Affirmed in part and reversed in part and remanded for further proceedings consistent herewith.
McCORD, C.J., and MILLS, J., concur.
NOTES
[1] By reciting the various pleadings, the order thereof and the terms thereof this Court neither approves nor disapproves same. Such would be inappropriate since none of the points presented on this appeal directly relate to procedure. However, we are of the view that the pleadings herein mentioned together with the final judgment of foreclosure and the specific wording thereof are material either to an understanding of the issues or the resolution thereof.
[2] Receiver's fee; receiver's bond, Clerk's fee and accounting fee.
[3] Costs secured by the final judgment, documentary stamps and interest from the date of final judgment to the date of sale.
[4] The points as phrased by appellant are:

Point One  The trial court abused its discretion by refusing to consider the equities between the parties and by technically allowing plaintiff's bid to satisfy its judgment.
Point Two  The trial court committed reversible error in refusing to include as a reimbursable expense Provident's July 31, 1975 payment on the first mortgage.
Point Three  The trial court committed reversible error in refusing to allow interest at the rate of fifteen per cent as provided in the note and the guaranty on amounts found to constitute a deficiency.
[5] The rejection of the evidence relating to a payment by Provident on the first mortgage after entry of the final judgment of foreclosure but before the sale is also the subject of appellant's second point.
[6] Sub judice, as already noted, Provident, the mortgagee, was the successful bidder at the foreclosure sale.
[7] Indeed, to this very day no assault has ever been made upon the final judgment of foreclosure.
[8] Including the amounts allegedly expended by Provident to preserve the property.
[9] If secured by the mortgage.
[10] We express no view as to whether or not the final judgment of foreclosure could, indeed, have been properly amended.
[11] In the absence, of course, of fraud, collusion or some other such defense which has neither been suggested, alleged nor proved.
[12] Provident, Thunderbird and Red Carpet entered into a joint stipulation that the unencumbered fair market value of the property on the date of the foreclosure sale was $4,242,000.00 and that after subtracting $3,217,433.56 being the amount due on the first mortgage on the date of sale, the value of the remaining equity received by Provident was $1,024,566.44. The difference between that equity value and the amount of the final judgment of foreclosure is $404,927.22.
[13] Again, it is not necessary for us to here determine whether or not it would have been proper for the trial court, upon appropriate proceeding, to have amended the final judgment of foreclosure to include any of the sums (or all of them) now sought by appellants to have included in the deficiency judgment, because the record before us reflects no such proceeding nor attempted proceeding nor are the points on appeal so framed as to reasonably contemplate consideration of such an issue.
[14] Due credits being given, of course, for any undetermined amounts reasonably secured by the final judgment of foreclosure to be determined by future order, including but not necessarily limited to, interest, attorney's fees, receiver's compensation, costs and such other sums as are secured by the terms of the mortgage or note, but specifically reserved by the terms of the final judgment of foreclosure for future determination.
[15] Our task on review, and no doubt the task of the trial judge, has been complicated by virtue of the order and type of pleadings by which the issues in the trial court were framed.
[16] See, however, F.S. 702.06.
[17] $1,429,493.66.