503 So.2d 1293 (1987)
RESORTS INTERNATIONAL, INC. and GB Management LTD., Appellants,
v.
CHARTER AIR CENTER, INC., Appellee.
No. 86-141.
District Court of Appeal of Florida, Third District.
February 10, 1987.
On Motion for Rehearing and Clarification April 7, 1987.
*1294 Horton, Perse & Ginsberg and Mallory Horton, Prunty & Olsen, Miami, for appellants.
Magill & Lewis and R. Fred Lewis, Miami, for appellee.
Before BARKDULL, NESBITT and BASKIN, JJ.
NESBITT, Judge.
Resorts International, Inc. (Resorts) and GB Management Ltd. (GB) appeal from the entry of an adverse final judgment. We affirm the entry of judgment as to Resorts' and GB's liability for breach of contract but reverse the award for damages.
In 1978, Resorts purchased a Bahamian Casino in Freeport. At that time, Charter Air Center, Inc. (Charter) was providing flight service to the casino for gambling junkets. Resorts negotiated with Charter through Charter's president, William Cousins, for a junket flight program. Since Mackey Airlines (Mackey) enjoyed certain required Civil Aeronautical Board certifications which allowed it to operate flights to Freeport more freely, Resorts encouraged Charter to acquire operational and managerial control over Mackey. At the time, Mackey had filed for chapter 11 bankruptcy protection. Resorts also encouraged Charter to acquire additional aircraft in order to accommodate an anticipated increase in flight service requirements.
As part of the agreement, Resorts planned to provide Charter with a financial guarantee of up to $8.5 million for the purchase and lease of an aircraft. The aircraft was to be used at night for Resorts' junket flights, but Charter would have been free to use it at all other times for its regularly scheduled commercial flights. Resorts sent Charter a letter of its intent to provide a financial guarantee, dated June 21, 1979, to be used in arranging credit for the purchase of an aircraft. Subsequently, Resorts informed Charter that the financial guarantee would have to be reduced to $6 million. Upon the representations made to Charter by Resorts, Mr. Cousins proceeded with the expansion of Charter and attempted to obtain additional aircraft.
Charter entered into a written contract with Resorts' subsidiary, GB, on August 1, 1979, whereby Charter agreed to fly, and Resorts agreed to use, a minimum number of flight hours per month with certain specified aircraft until December 31, 1987 or until GB ceased to operate a casino in Freeport. In consideration, Resorts was to pay *1295 Charter the cost of this operation plus fifteen per cent.
On September 12, 1979, Resorts advised Charter that problems had arisen with respect to the guarantee and proposed a new rate schedule to be used until the financial guarantee was forthcoming. Charter agreed to operate under the new schedule until the guarantee could be obtained.
Eventually, Resorts' use of Charter's services tapered off and the guarantee was never obtained. Charter brought suit for breach of contract alleging that Resorts failed to use Charter's services as required by the contract. The trial court entered a partial summary judgment. Since GB ceased operating the casino on September 25, 1983, the court limited proof of damages for prospective loss of profit to the losses sustained up until that date. The judge returned a verdict for Charter finding specifically that it had sustained: $450,000 lost profits; $1,200,000 of damage as a result of expenses related to acquiring CAB certifications; losses of $450,000 associated with salvaging Mackey; and, a $258,000 loss which resulted from the purchase and sale of an airplane that was to be used to service Resorts.
Contrary to Resorts' contention, there is competent evidence to support the jury's finding with respect to Resorts' liability. A parent corporation may be held liable for the acts of its subsidiary when the subsidiary is a mere instrumentality of the parent and is used to mislead the parent's creditors or to fraudulently avoid liability. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984). The record in the present case reveals that Charter dealt with only Resorts and its representatives in negotiating the contract and the guarantee. It was only after Mr. Cousins, representing Charter, sat down at the table to sign the contract that Resorts informed him that, as a mere formality, GB would replace Resorts as the named party in the contract. There was ample evidence from which the jury could have concluded that it was Resorts' intent to fraudulently avoid liability and mislead Mr. Cousins.
Similarly without merit is Resorts' contention that the trial court erred by admitting evidence which established the existence of an oral contract for a financial guarantee. It is true that a promise made directly to a creditor to pay the debts of some third party falls within the statute of frauds. § 725.01, Fla. Stat. (1983); see also 2 A. Corbin, Corbin On Contracts § 347 (1950). In contrast, however, "[a] promise to a debtor to pay or otherwise answer for his debt or default to a third person is not within the statute." 2 A. Corbin, supra § 357 at 241; accord Weingart v. Allen & O'Hara, Inc., 654 F.2d 1096 (5th Cir.1981); 3 S. Williston, A Treatise on the Law of Contracts § 460 (3d ed. 1960). Therefore, the trial court properly admitted evidence of the oral agreement as presented by the debtor, Charter.
With respect to damages, we agree with Resorts' final contention that the trial court erred in allowing Charter to recover for losses sustained by its sister company, Sunny Air, and for both its reliance and expectation damages.
"It is well settled that, regardless of what the evidence may otherwise show, plaintiff must recover, if at all, on the case made by her declaration." Atlantic Co. v. Orendorff, 156 Fla. 1, 22 So.2d 260, 263 (1945) (en banc); see also Mansell v. Foss, 343 So.2d 910 (Fla. 3d DCA 1977). In the present case, Charter did not seek relief for damages suffered by its sister company in its pleadings, nor did it plead that these two companies were actually one and the same. Furthermore, there was no consent, stipulation, nor acquiescence by Resorts, nor were the pleadings amended to reflect the issue which was brought before the court.[1] In fact, Resorts objected to the introduction of evidence pertaining to Sunny Air's damages as being irrelevant to the issue of Charter's damages. The mere *1296 facts that Charter used the two corporate names interchangeably at trial and that evidence was introduced which demonstrated that both companies were owned by the same person cannot establish Charter's allegation by implication. Cf. Walter E. Heller & Co., S.E. v. Pointe Sanibel Dev. Corp., 392 So.2d 306 (Fla. 3d DCA 1980) (interchangeably using two corporate names during trial did not prove nonparty's right to recover by implication). Charter should have been precluded from raising this issue at trial. Cf. Griffin v. Griffin, 463 So.2d 569 (Fla. 1st DCA 1985) (absent parties' stipulation, consent, acquiescence, motion and order, or amendment, the issues at trial are fixed by the pleadings); Provident Nat'l Bank v. Thunderbird Assocs., 364 So.2d 790 (Fla. 1st DCA 1978) (same). Consequently, the trial court erred in including the damages suffered by Sunny Air in its judgment for Charter. Cf. Pointe Sanibel Dev. Corp., 392 So.2d at 308; Mansell v. Foss, 343 So.2d 910 (Fla. 3d DCA 1977) (where pleadings did not allege that assignment of debt had been made by a nonparty to the plaintiff, plaintiff was not entitled to recover on this theory which was different from the complaint); American Ladder & Scaffold Co. v. Miami Ventilated Awning Co., 150 So.2d 268 (Fla. 3d DCA 1963) (where complaint failed to allege that a nonparty and the defendant were one and the same, plaintiff failed to state a cause of action).
The trial court also erred in awarding Charter damages for both its lost profits and its expenditures made in reliance upon the contract. A party is entitled to recover, as against the breaching party, the profits lost as a result of the breach[2] or, in the alternative, the nonbreaching party may treat the contract as void and seek to recover those expenditures made in reliance upon the performance of the contract. Beefy Trail, Inc. v. Beefy King Int'l, Inc., 267 So.2d 853 (Fla. 4th DCA 1972). These measures are alternate remedies and "[o]ne method of ascertaining damages is exclusive of the other... . It is incorrect for evidence to be introduced as to both methods, the injured party must make an election in regard to which method he seeks to recover, and pursue that method only." Sundie v. Lindsay, 166 So.2d 152, 153 (Fla. 3d DCA 1964); see also Beefy Trail, Inc., 267 So.2d at 853.
Finding that the trial court erred in awarding damages for both Charter's expectation of profit and reliance costs and for damages suffered by a nonparty, we reverse the award and remand for a new trial on the issue of damages. We affirm the judgment under review with respect to Resorts' and GB's liability, finding that the verdict is supported by the evidence and that the trial court correctly admitted evidence pertaining to Resorts' guarantee to Charter. Accordingly, we
Affirm in part, reverse in part, and remand for further proceedings.

ON MOTION FOR REHEARING AND CLARIFICATION
This court inadvertently omitted the fact that the financial guarantee offered to). *1297 Charter Air Center, Inc. (Charter) by Resorts International, Inc. (Resorts) was not only for the purchase of an aircraft but also for the lease of an aircraft. Additionally, the figures for the losses resulting from CAB certification were transposed with those figures representing damages caused by the salvaging of Mackey Airlines. Therefore, we grant appellees' motion for rehearing. We substitute the first sentence of the first paragraph beginning on page 2 with the following:
As part of the agreement, Resorts planned to provide Charter with a financial guarantee of up to $8.5 million for the purchase and lease of an aircraft.
Also, we substitute the last sentence of the fourth paragraph, beginning on page 2 and ending on page 3 with the following:
The judge returned a verdict for Charter finding specifically that it had sustained: $450,000 lost profits; $450,000 of damage as a result of expenses related to acquiring CAB certifications; losses of $1,200,000 associated with salvaging Mackey; and, a $258,000 loss which resulted from the purchase and sale of an airplane that was to be used to service Resorts.
In all other respects, both appellee's and appellants' motion for rehearing and clarification are denied.
NOTES
[1] We note that even if Charter had sought to amend its complaint it would have been unable to recover damages sustained by its sister company, Sunny Air. Charter asserts that these two companies are so interrelated that they are in reality one company. Mr. Cousins seeks to have the court pierce the corporate veils of these companies, which he owns, so that he may recover for the damages sustained by both Charter and Sunny Air. The corporate veil may be used as a defense but may not be removed at will by the stockholders for the purposes of seeking affirmative relief. See State v. Barreiro, 432 So.2d 138 (Fla. 3d DCA), review denied, 441 So.2d 631 (Fla. 1983); Ed Skoda Ford, Inc. v. P & P Paint & Body Shop, 277 So.2d 818 (Fla. 3d DCA), cert. denied, 284 So.2d 395 (Fla. 1973); see also Soclof v. State Road Dep't, 169 So.2d 510 (Fla. 1st DCA 1964
[2] Although Resorts contends that Charter's expectation damages are too speculative to recover, the law requires only that the damages be reasonably ascertainable. See Sampley Enters. v. Laurilla, 404 So.2d 841 (Fla. 5th DCA 1981); Conner v. Atlas Aircraft Corp., 310 So.2d 352 (Fla. 3d DCA), cert. denied, 322 So.2d 913 (Fla. 1975); 17 Fla.Jur.2d Damages § 77 (1980). So long as there is a yardstick by which future profits may be measured, such damages may be recovered. Twyman v. Roell, 123 Fla. 2, 166 So. 215 (1936); Arcade Steam Laundry v. Bass, 159 So.2d 915 (Fla. 2d DCA 1964). The contractual agreement between Charter and Resorts provides for a measure of profits of fifteen percent over the cost of operating the airline service for the minimum number of hours required by the contract. Since this measure allows for a sufficiently accurate approximation of Charter's lost profit, it may recover its expectation damages. Cf. U.S. Home Corp. v. Suncoast Utils., Inc., 454 So.2d 601 (Fla. 2d DCA 1984) (developer could recover lost profits for breach of contract to haul dirt where cost of removal was known and contract was based on minimum amount of dirt removal).