# Third District Court of Appeal

## State of Florida

Opinion filed May 1, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-676
Lower Tribunal No. 10-63470
_____

## Franco D'Agostino, et al.,
Appellants,

vs.

## CCP Ponce, LLC,
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jose M. Rodriguez, Judge.

Lamelas Law, PA, and Gustavo J. Lamelas and Daniel Buigas, for appellants.

Anthony & Partners, LLC, and John A. Anthony and Nicholas Lafalce (Tampa), for appellee.

Before EMAS, C.J., and SCALES and HENDON, JJ.

SCALES, J.

In this appeal of a foreclosure deficiency judgment, the appellants are the mortgagor, Ponce Trust, LLC ("Ponce Trust"), and the two guarantors of the underlying promissory note, Franco D'Agostino ("D'Agostino") and Dayco Properties, Ltd. (collectively, the "Guarantors"). Appellee CCP Ponce, LLC ("CCP Ponce") is a successor-in-interest of the original lender and mortgagee, Mellon United National Bank ("Mellon"). On March 6, 2018, the trial court entered the challenged deficiency judgment that awarded CCP Ponce $7,792,150.35 against Ponce Trust, and $44,041,969.88 against the Guarantors ("Final Deficiency Judgment"). For the reasons stated herein, we affirm the Final Deficiency Judgment as to Ponce Trust, but reverse the Final Deficiency Judgment against the Guarantors and remand to the trial court for further proceedings.

**I. History of the Proceedings**

A. The Relevant Loan Documents

In March 2007, Ponce Trust entered into a Construction Loan Agreement with Mellon. Amending and restating a loan originating in 2004, this March 2007 Construction Loan Agreement, and accompanying loan documents, memorialized a $50,000,000 principal loan for Ponce Trust to use in constructing a twelve-story condominium project in Coral Gables, Florida.

In conjunction with the loan, in March 2007, the Guarantors executed two distinct guaranty agreements: (i) a Guaranty Agreement, and (ii) a Guaranty of

Completion. In the Guaranty Agreement, the Guarantors guaranteed payment of Ponce Trust's loan obligations. The Guaranty Agreement, however, significantly limited D'Agostino's liability, providing that, in the event the lender and Ponce Trust complete Tranche B funding,[1] D'Agostino's guarantee of the loan's principal would be eliminated. D'Agostino would then remain liable only for "all costs of collection, including court costs and attorneys fees through all appellate levels and post judgment proceedings, and for default rate interest," as well as for his obligations under the separate Guaranty of Completion.

In the separate Guaranty of Completion, the Guarantors agreed to perform Ponce Trust's "Obligations" in the event Ponce Trust did not complete construction of the subject condominium project. The term "Obligations" is specifically defined in the document and includes: (i) constructing the improvements timely, in accordance with the construction plans, and "in a good and workmanlike manner;" (ii) furnishing labor and materials and completing payment therefor; and (iii) providing additional funds from sources outside of the loan, if necessary, to complete the project.

Potentially relevant in this case, the Guaranty of Completion contains two provisions that are not found in the Guaranty Agreement: (i) a provision stating

---

[1] Tranche B funding represented $40,375,000 of the total loan. The record indicates that the lender and Ponce Trust completed Tranche B funding, thus triggering D'Agostino's limited liability under the Guaranty Agreement.

that the liability assumed under the Guaranty of Completion will not be affected by the acceptance of any settlement or judgment of a bankruptcy court; and (ii) a provision stating that the Guarantors' obligations under the Guaranty of Completion are "completely independent" from the obligations of Ponce Trust.

While the 2007 Construction Loan Agreement and promissory note were modified twice again, in 2009 and 2010, the loan documents relevant to this appeal – the Guaranty Agreement and the Guaranty of Completion – were not amended by those modifications.

B. The Foreclosure Action

In December 2010, MUNB Loan Holdings, Inc. ("MUNB"), a successor to Mellon, filed the instant foreclosure action and, in March 2011, MUNB filed the operative amended complaint. This amended complaint alleges a May 2010 default date, and asserts seven counts (against various defendants).[2] Importantly, while

---

[2] Count I (against Ponce Trust) seeks damages for breach of the promissory note and alleges that $28,731,231.15 in principal remains due and owing under the note. Count II (against Ponce Trust) seeks to foreclose on the mortgage securing the note.
Count III (against Ponce Trust) seeks to foreclose on personal property secured by other security agreements. Count IV (against the Guarantors) alleges that, to the extent the Guarantors are in possession of personal property secured by other security agreements, MUNB is entitled to replevin against the Guarantors. Count V (against Ponce Trust) seeks enforcement of an assignment of rents document executed as part of the loan. Count VI (against Dayco Properties, LLC) is a claim on the Guaranty Agreement premised on Ponce Trust's failure to meet its payment obligations under the promissory note. Count VII (against D'Agostino) is a claim on the Guaranty Agreement premised on Ponce Trust's failure to meet its payment obligations under the promissory note.

4

MUNB's amended complaint specifically alleges that the Guarantors executed and delivered to Mellon the Guaranty of Completion (and the Guaranty of Completion is attached as an exhibit to the amended complaint), MUNB's amended complaint alleges no claim against the Guarantors under the Guaranty of Completion.

In their answer to MUNB's amended complaint, Ponce Trust and the Guarantors denied that default had occurred and was continuing to occur, and further denied MUNB's allegations that Ponce Trust was leasing units in violation of the loan documents. In their affirmative defenses, Ponce Trust and the Guarantors asserted that: (i) MUNB had unclean hands; (ii) MUNB was mis-applying their payments; and (iii) payment had been made insofar as MUNB was holding funds belonging to Ponce Trust and the Guarantors that should have been used for the required loan payments.

In July 2011, MUNB filed its summary judgment motion seeking a final summary judgment on *all counts* in its amended complaint except for the replevin count (Count IV). The trial court conducted a hearing on MUNB's motion in December 2011, and, on June 4, 2012, the trial court entered a First Amended Summary Final Judgment of Foreclosure in favor of MUNB and against Ponce Trust only ("Foreclosure Judgment").[3] This Foreclosure Judgment: (i) determined

---

[3] The trial court entered the initial foreclosure judgment on December 14, 2011, shortly after the hearing. The trial court later amended it on June 4, 2012, *nunc pro tunc*, to December 14, 2011, to reflect an adjustment in the amounts due.

that MUNB was owed a total of $37,346,025.50 (comprising approximately $28,731,231 in principal on the promissory note, costs, approximately $8,553,000 in default rate interest, and approximately $174,500 in post-judgment interest that accrued from December 14, 2011, with a credit of approximately $112,000 that was held in escrow); (ii) foreclosed Ponce Trust's interest in the real and personal property in favor of MUNB; and (iii) set a foreclosure sale for the property. Immediately after liquidating the amount due under the note, the Foreclosure Judgment contains the following language: "which shall bear interest per year at the interest rate provided by Section 55.03(1), Florida Statutes (2011)." No party appealed the Foreclosure Judgment.

The Foreclosure Judgment adjudicated and disposed of Counts I, II, III, and V of the amended complaint, as well as Ponce Trust and the Guarantors' affirmative defenses to those claims. With regard to Counts VI and VII (the counts against the Guarantors under the Guaranty Agreement), the judgment included the following language: "As to Count VI (Breach of Guaranty Agreement) and Count VII (Breach of Guaranty Agreement), this Court reserves jurisdiction to determine the validity and enforceability of the Guaranty Agreement and Guaranty of Completion, and the extent of Dayco's and D'Agostino's liability thereunder, if any."[4]

_____

[4] The record is unclear as to the ultimate disposition of the replevin count (Count

6

C. Ponce Trust Files for Chapter 11 Reorganization

On February 22, 2012, prior to the foreclosure sale, Ponce Trust filed for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida. Ponce Trust's filing of the bankruptcy case stayed the foreclosure proceedings in the trial court.[5] In December 2012, Ponce Trust filed its plan of reorganization, which the Bankruptcy Court approved on December 26, 2012. The plan identified seventy-seven unsold units in the condominium project, and required that the creditor[6] receive payments on its claim from revenues generated from the ongoing sale of the units, as well as rental income from the unsold units. The plan effectively discharged Ponce Trust's liability to CCP Ponce for all default rate interest. The plan did not address or modify the Guarantors' liability.

In September of 2016, CCP Ponce filed a motion in the Bankruptcy Court to re-open the bankruptcy case for the sole purpose of terminating the automatic stay of the foreclosure action. At that point, forty-two condominium units remained unsold, and the amount of the debt had been reduced from the approximately $37

---

IV) asserted against the Guarantors. Such disposition is not essential to our adjudication of this appeal.

[5] See 11 U.S.C. § 362.

[6] During the pendency of the reorganization, CCP Ponce became the successor-in-interest of MUNB.

million reflected in the Foreclosure Judgment to approximately $19 million. On October 26, 2016, the Bankruptcy Court granted CCP Ponce's motion, lifted the automatic stay, and entered an order allowing the foreclosure sale to go forward.

D. The Foreclosure Sale and CCP Ponce's Motion for Deficiency Judgment

After the Bankruptcy Court lifted the stay, the trial court set the foreclosure sale for February 9, 2017. The remaining collateral – now forty-one units – was sold at foreclosure to CCP Ponce in the bid amount of $900,200.00. Less than a week later, on February 15, 2017, CCP Ponce filed its motion for deficiency judgment seeking a judgment against Ponce Trust and the Guarantors for the difference between the amount due pursuant to the Foreclosure Judgment and the fair market value of the unsold condominium units (as of the date of the foreclosure sale).

In its motion, CCP Ponce specifically set forth the amount CCP Ponce claimed it was owed by Ponce Trust and the Guarantors – the "Deficiency Balance" – as follows: the amount of the Foreclosure Judgment (as adjusted by Ponce Trust's reorganization) remaining due and owing of $19,080,454.14, less the market value of remaining collateral in the amount of $13,000,000. This resulted in an alleged Deficiency Balance of $6,080,454.14. Indeed, in three separate paragraphs of its motion, CCP Ponce claims that this is the amount it is due from

8

Ponce Trust and the Guarantors. CCP Ponce did not assert a claim in this motion that any amounts were due under the Guaranty of Completion.

E. The Trial and Entry of the Challenged Final Deficiency Judgment

On January 22, 2018, the trial court conducted a bench trial on CCP Ponce's motion for deficiency judgment. On the Friday prior to the Monday bench trial, CCP Ponce filed a pre-trial memorandum indicating that it would be seeking damages against the Guarantors based not only on the Guaranty Agreement but *also* based on the Guaranty of Completion. In this submission, CCP Ponce asserted that it would be seeking a deficiency judgment of $7,792,150.35 against Ponce Trust, and $44,041,969.88 against the Guarantors.

At the beginning of the trial, the Guarantors' counsel objected to any claim by CCP Ponce based on the Guaranty of Completion:

> They have never sued – they have never asserted a Cause of Action on the Guaranty of Completion. And so I object to any kind of attempt to shoehorn my client to liability that he did not accept on that theory. That's a very important issue.

The trial court, at least initially, seemed to agree, stating in response to CCP Ponce's counsel:

> [I]f it's not in your Complaint and you haven't pled it, you're not entitled to receiving [sic] it, period. That's what the law is . . . It's a very simple statement, if you don't plead it, you're not entitled to recover, period, end of sentence . . . . Again, if you didn't plead it as a Cause of Action in your Complaint, you're not entitled to recover. Period.

9

Yet, over the objections of the Guarantors' counsel, the trial court permitted CCP Ponce to put on evidence regarding damages allegedly awardable pursuant to the Guaranty of Completion, and denied the Guarantors' involuntary dismissal motion that sought dismissal of any claims related to the Guaranty of Completion.

Over the objection of the Guarantors, CCP Ponce introduced a Deficiency Judgment Computation Worksheet that, consistent with CCP Ponce's pre-trial memorandum, separately calculated the deficiency amounts allegedly owed by Ponce Trust and the Guarantors. As discussed in further detail below, the deficiency damages sought against Ponce Trust were significantly less than those sought against the Guarantors primarily because: (i) approximately $32 million in pre-foreclosure sale default rate interest had been discharged in Ponce Trust's bankruptcy reorganization; and (ii) the non-discharged interest accrued not at the eighteen percent default rate outlined in the loan documents, but, rather, at the significantly lower post-judgment interest statutory rate set by section 55.03(1).[7] The trial court rejected the Guarantors' arguments that they should receive the same treatment as the principal debtor, Ponce Trust.

Ultimately, on March 6, 2018, the trial court entered the challenged Final Deficiency Judgment against the Guarantors based on the damage calculations

_____

[7] Section 55.03(1) provides that Florida's Chief Financial Officer shall set, on a quarterly basis, the interest rate payable on judgments. § 55.03(1), Fla. Stat. (2011).

submitted by CCP Ponce in its pre-trial memorandum and Deficiency Judgment Computation Worksheet – damages presumably premised on both the Guaranty Agreement and the Guaranty of Completion. The trial court's Final Deficiency Judgment awarded CCP Ponce a deficiency of $7,792,150.35 against Ponce Trust, and $44,041,969.88 against the Guarantors. In its Final Deficiency Judgment, the trial court specifically concluded that any limitations on the Guarantors' liability in the Guaranty Agreement are irrelevant "because the Completion Guaranty provides for unlimited liability." Both Ponce Trust and the Guarantors appealed this Final Deficiency Judgment.[8]

**II. Issues on Appeal**

While the Guarantors make several arguments on appeal, we characterize and address what we perceive as the three principal issues in this appeal: (i) whether the trial court erred by allowing claims to proceed based on the Guaranty of Completion; (ii) whether the trial court erred by not giving the Guarantors the financial benefits that inured to Ponce Trust by virtue of Ponce Trust's bankruptcy reorganization; and (iii) whether the trial court erred by calculating the post-

---

[8] While both Ponce Trust and the Guarantors appealed the Final Deficiency Judgment, the initial brief advances only the arguments of the Guarantors. Hence, any challenge to the Final Deficiency Judgment by Ponce Trust is deemed abandoned. City of Miami v. Haigley, 143 So. 3d 1025, 1027 n.1 (Fla. 3d DCA 2014). Therefore, without further elaboration, we affirm the Final Deficiency Judgment as it relates to Ponce Trust.

Foreclosure Judgment interest at the eighteen percent default rate in the loan documents, as opposed to the post-judgment interest rate established in section 55.03(1). We address each issue in turn.

**III. Analysis**

A. <u>CCP Ponce's Claim Based on the Guaranty of Completion</u>[9]

As mentioned earlier, over the objections of the Guarantors' counsel, the trial court allowed CCP Ponce to assert a claim against the Guarantors based on the Guaranty of Completion. While not entirely clear from the Final Deficiency Judgment,[10] it does appear that the trial court's allowing CCP Ponce to assert a claim under the Guaranty of Completion resulted in significant benefits to CCP Ponce. By concluding that the Guaranty of Completion provides for "unlimited liability" of the Guarantors, the trial court did not limit D'Agostino's liability as expressly provided in the Guaranty Agreement, nor did the trial court conduct any legal analysis of whether the Guaranty Agreement limited the liability of the Guarantors to payments owed to CCP Ponce by Ponce Trust.[11] The Guarantors

---

[9] Whether a pleading is sufficient in its allegation of a claim is a question of law that we review *de novo*. <u>Patel v. Shah</u>, 217 So. 3d 152, 154 (Fla. 3d DCA 2017).

[10] The Final Deficiency Judgment does not itemize which damages against the Guarantors are premised on the Guaranty Agreement as opposed to the Guaranty of Completion.

[11] Because we conclude that CCP Ponce did not plead a claim under the Guaranty of Completion, we need not, and do not, reach the issue of whether Ponce Trust's payment obligations are "Obligations" guaranteed by the Guarantors under the

assert, as they did below, that it was error for the trial court to allow CCP Ponce to prosecute this claim, because no claim was pled on the Guaranty of Completion.

As we have quoted in section I.E., *supra*, at the outset of the bench trial on CCP Ponce's deficiency judgment motion, the trial court unequivocally stated what is axiomatic in Florida law: a party cannot recover damages based on an unpled claim. Michael H. Bloom, P.A. v. Dorta-Duque, 743 So. 2d 1202, 1203 (Fla. 3d DCA 1999) ("It is well settled that a defendant cannot be liable under a theory that was not specifically pled."). Given the trial court's clear statements that CCP Ponce could not recover on an unpled claim, we can conclude only that the trial court decided that CCP Ponce had pled a claim against the Guarantors based on the Guaranty of Completion. We have scoured the record, though, and are unable find that CCP Ponce pleaded any such claim.[12] Neither MUNB's operative amended complaint nor CCP Ponce's deficiency judgment motion raised such a claim. In fact, in its deficiency judgment motion, CCP Ponce plainly, and

Guaranty of Completion. Nor do we reach the issue of whether the evidence at trial established whether Ponce Trust failed to complete any of the "Obligations" that were guaranteed by the Guarantors under the Guaranty of Completion. It certainly does not appear, though, that the trial court, in its Final Deficiency Judgment, awarded any damages to CCP Ponce specifically related to Ponce Trust's failure to complete the project. It appears, rather, that the trial court simply concluded that the Guarantors' liability was unlimited because of certain unidentified language in the Guaranty of Completion.

[12] We note that, at oral argument, CCP Ponce's counsel was unable to provide a record citation to where his client's claim against the Guarantors, based on the Guaranty of Completion, had been pleaded.

13

without qualification, asserted that the deficiency amount being sought *from the Guarantors* – consistent with the Guaranty Agreement – is the difference between the amount remaining due pursuant to the Foreclosure Judgment (which CCP Ponce quantified as $19,080,454.14) and the fair market value of the collateral (which CCP Ponce quantified as $13,000,000). CCP Ponce then – again, consistent with the Guaranty Agreement – specifically calculated the difference, alleging an entitlement both from Ponce Trust and *from the Guarantors* of $6,080,454.14.

While we note that the Foreclosure Judgment "reserves jurisdiction to determine the validity and enforceability of the Guaranty Agreement *and Guaranty of Completion*" (emphasis added), we have been provided with no authority that a trial court's mere reference to a document in a reservation of jurisdiction provision somehow supplants a plaintiff's burden to plead a cause of action premised on that document. See, e.g., Marin v. Marin, 842 So. 2d 273, 274-75 (Fla. 3d DCA 2003); Muhlrad v. Muhlrad, 375 So. 2d 24, 26 (Fla. 3d DCA 1979). As the trial court correctly stated at the onset of the deficiency trial, a cause of action must be pled for a trial court to award damages on the cause of action. Bloom, 743 So. 2d at 1203.

Against this backdrop, we simply are unable to conclude, as the trial court apparently did, that CCP Ponce pled entitlement to damages against the Guarantors based on anything other than the Guaranty Agreement. Additionally, as we

observed in footnote 10, *supra*, we are unable to determine from the record which damages in the Final Deficiency Judgment the trial court awarded against the Guarantors pursuant to the Guaranty Agreement, as opposed to the Guaranty of Completion. Therefore, we reverse all of those portions of the Final Deficiency Judgment that awarded damages against the Guarantors, and remand for the trial court to recalculate, consistent with this opinion, the damages owed by each of the Guarantors based exclusively on the Guaranty Agreement, without regard to the Guaranty of Completion.[13] On remand, the trial court may conduct whatever proceedings, evidentiary and otherwise, it deems necessary to perform the requisite recalculation.

B. Effect of Ponce Trust's Bankruptcy on the Guarantors' Liability

Citing to federal bankruptcy law,[14] the Guarantors next argue that the trial court erred in summarily concluding in the Final Deficiency Judgment that the

---

[13] We note that, in its Final Deficiency Judgment, the trial court purported to calculate D'Agostino's liability – *without* regard to the Guaranty of Completion – at approximately $15,310,000. It appears that the trial court calculated this sum simply by eliminating principal from the total amounts owed to CCP Ponce, as is no doubt required by the Guaranty Agreement. This calculation proved purely academic, though, after the trial court determined that, irrespective of the Guaranty Agreement's limiting provisions, the Guaranty of Completion would provide for "unlimited liability" of the Guarantors. On remand, the trial court cannot perform the requisite recalculation of the Guarantors' liability under the Guaranty Agreement by restating this sum because this calculation is not informed by our holdings in sections III. B. and C., *infra*. On remand, the trial court should recalculate the amount based on the holdings in this opinion.

[14] See, e.g., In re Troutman Enters., Inc, 253 B.R. 8, 11 (B.A.P. 6th Cir.2000)

Guarantors' liability is unaffected by Ponce Trust's bankruptcy reorganization. The Guarantors assert that, irrespective of whether CCP Ponce pled a claim under the Guaranty of Completion, they should nevertheless be entitled to the benefits that inured to Ponce Trust as a result of Ponce Trust's bankruptcy reorganization. Specifically, the Guarantors suggest that, because Ponce Trust's bankruptcy reorganization eliminated Ponce Trust's obligation to pay pre-Foreclosure Judgment accrued default interest, the Guarantors' interest obligations should be similarly discharged.

CCP Ponce responds to the Guarantors' argument by citing federal authority suggesting a guarantors' liability for the debts of a Chapter 11 debtor is unaffected by a bankruptcy reorganization unless the confirmed plan provides for specific treatment of the guarantors.[15]

The issue is obviously significant. According to CCP Ponce's calculations in its pre-trial memorandum and Deficiency Judgment Computation Worksheet, Ponce Trust owes CCP Ponce approximately $36 million less than the Guarantors. While not entirely clear from the record, suffice to say a significant amount of the difference results from Ponce Trust's bankruptcy reorganization plan. So, whether

_____

("The plan is essentially a new and binding contract between the Reorganized Debtor and the Petitioning Creditors.").

[15] See, e.g., In re Applewood Chair Co., 203 F.3d 914, 918 (5th Cir. 2000) ("The general rule is that a discharge in bankruptcy does not affect a guarantor's liability.").

the Guarantors' liability under the Guaranty Agreement is limited to what Ponce Trust owes is critical.

While the parties' arguments on this issue are focused exclusively on federal bankruptcy law, in our view the issue is one of Florida contract law, that is, whether the Guaranty Agreement manifests the parties' intent for the Guarantors to have liability for (i) Ponce Trust's obligations to CCP Ponce or, in the alternative, (ii) all sums due under the loan documents, irrespective of what Ponce Trust might owe CCP Ponce. We recognize that this issue may pose a purely legal question; we are loath, however, to reach and adjudicate the issue in the first instance without giving either the parties or the trial court the opportunity to address it.[16] Therefore, on remand, the trial court should specifically address and adjudicate the parties' intent regarding the scope of the Guarantors' liability under the Guaranty Agreement. On remand, the trial court may conduct whatever proceedings it deems necessary to perform the requisite inquiry.

C. The Appropriate Post-Judgment Interest Rate for Guarantors' Liability[17]

If, on remand, the trial court determines that the parties did not intend for the Guarantors' liability to be limited to amounts owed by the borrower, Ponce

---

[16] We express no opinion on the issue.

[17] We review *de novo* a trial court's decision regarding post-judgment interest. Alexander v. Kalitan, 263 So. 3d 70, 71 (Fla. 4th DCA 2019).

17

Trust,[18] then the trial court will need to revisit its calculation of the default interest owed by the Guarantors. The Guarantors assert that the trial court erred in awarding CCP Ponce post-Foreclosure Judgment interest at the eighteen percent default rate contained in the Construction Loan Agreement, rather than the statutory post-judgment interest rate prescribed in section 55.03(1) of the Florida Statutes. Again, the practical significance of this issue is hard to overstate: it appears that well over $26 million of post-Foreclosure Judgment interest awarded to CCP Ponce is calculated using the eighteen percent default rate. The Guarantors argue that the amounts Ponce Trust owed to CCP Ponce were liquidated by the trial court's adjudication of Count I of CCP Ponce's amended complaint (CCP Ponce's action on the promissory note), and that, once this liability was reduced to a judgment, pursuant to the express language of the Foreclosure Judgment, post-judgment interest would accrue at the statutory interest rate, rather than the contractual default interest rate.

CCP Ponce counters by asserting that the Guarantors were not named as parties in either Count I (CCP Ponce's action on the note) or in Count II (CCP Ponce's foreclosure count) of the amended complaint, and that, by the express

--------

[18] Obviously, if the trial court determines that the Guarantors' liability under the Guaranty Agreement is limited to the amount Ponce Trust owed CCP Ponce, then this step is unnecessary. In calculating the amount due by Ponce Trust, the trial court applied the statutory, rather than the contractual, default interest rate to the post-Foreclosure Judgment sums due.

terms of the Foreclosure Judgment, the trial court did not adjudicate any of CCP Ponce's claims against the Guarantors. CCP Ponce suggests that the Guarantors are thus similarly situated to the guarantor in Provident National Bank v. Thunderbird Associates, 364 So. 2d 790 (Fla. 1st DCA 1978).

In Thunderbird, after the bank had obtained a foreclosure judgment against its borrower and purchased the foreclosed property at a foreclosure sale, the bank brought a distinct, separate deficiency action against a guarantor of the loan. Id. at 792-93. After conducting a trial, the trial court entered a deficiency judgment against the guarantor, in favor of the bank, setting a post-judgment interest rate on the deficiency judgment at the statutory rate. Id. at 794. The bank appealed arguing that, pursuant to the loan agreement, the borrower had agreed to pay default interest at fifteen percent and, pursuant to the guaranty agreement, the guarantor had agreed to guarantee the sums payable by the borrower. Id. at 796-97. Our sister court agreed with the bank and reversed the trial court. The Thunderbird court reasoned that, because the guarantor "was not an original party to the action and the claim against it is founded on the guaranty," the bank's contract with its borrower – calling for a fifteen percent default interest rate – controlled. Id. at 797-98. Importantly, underpinning its holding, the Thunderbird court twice makes reference to the guarantor not being an original party to the foreclosure

19

proceedings, and that the bank's separate, independent action against the guarantor was based exclusively on the guaranty. Id. at 797, 798.

We distinguish Thunderbird from our case. Not only were the Guarantors original parties to the foreclosure proceedings, the Guarantors' claims and defenses were procedurally intertwined with CCP Ponce's claims against Ponce Trust. In its summary judgment motion resulting in the Foreclosure Judgment, CCP Ponce sought to adjudicate fully its claims against, and the defenses of, the Guarantors. Indeed, the parties litigated the Guarantors' affirmative defenses to the foreclosure, and the Foreclosure Judgment adjudicates those defenses    Hence, this case is procedurally distinguishable from Thunderbird, and the Guarantors are not similarly situated to the Thunderbird guarantor.

Based on our reading of Thunderbird, these distinguishing facts are dispositive. Because the Guarantors were, at all times, not only parties to, but active litigants in, the proceedings resulting in the entry of the Foreclosure Judgment, it makes little sense to conclude that the Foreclosure Judgment's liquidation of the amounts due would not inure to, or be binding upon, them.  The Thunderbird decision does not control the post-judgment interest issue of the instant case. Rather, under the distinctive facts of this case, the trial court should have followed the general rule that a debt bears interest at the contract rate only to the date of final judgment, and after that date, the total indebtedness bears interest

at the statutory rate. <u>Braswell v. Braswell</u>, 881 So. 2d 1193, 1203 (Fla. 3d DCA 2004).

Thus, on remand, if the trial court determines that the parties did not intend for the Guarantors' liability under the Guaranty Agreement to be limited to the amounts owed by Ponce Trust, the trial court should – when calculating the amounts due by the Guarantors under the Guaranty Agreement – apply the statutory interest rate to all post-Foreclosure Judgment sums due. Again, on remand, the trial court may conduct whatever proceedings it deems necessary to perform the requisite calculations.

**III. Conclusion**

We affirm those portions of the Final Deficiency Judgment assessing damages against Ponce Trust. We reverse those portions of the Final Deficiency Judgment assessing damages against the Guarantors, and remand for recalculation of those damages consistent with this opinion.

Affirmed in part; reversed in part and remanded.