**STAR BRITE DISTRIBUTING, INC.,**
**Plaintiff/Counter–Defendant,**

v.

**David C. GAVIN and Gary L. Geeslin,**
**Defendants/Counter–Plaintiffs/Third–**
**Party Plaintiffs,**

v.

**OCEAN BIO–CHEM, INC., Peter G. Dornau, Star Brite Distributing (Canada), Inc., and F.K.M., Inc., Third–Party Defendants.**

**Civ. A. No. EC 89–208–D–D.**

United States District Court,
N.D. Mississippi, E.D.

Aug. 23, 1990.

Michael Paul Shienvold, Fort Lauderdale, Fla., Thomas Y. Page, Edley H. Jones, III, Jackson, Miss., for plaintiffs.

Gary L. Geeslin, John W. Crowell, Columbus, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

The court has before it two motions to dismiss this cause or to transfer it to the Southern District of Florida; one motion is filed on behalf of Ocean Bio–Chem, Inc., the other on behalf of the remaining third-party defendants and the plaintiff/counter-defendant. The movants challenge this court's *in personam* jurisdiction over them, and also challenge the propriety of venue of the plaintiff's counter-claim and third-party claim for patent infringement. After careful consideration, the court is of the opinion that the motions are without merit and should be denied.

Defendants Gavin and Geeslin filed a motion in the Southern District of Florida to dismiss the cause for lack of *in personam* jurisdiction or to transfer the action to this court. On June 30, 1990, the District Court for the Southern District of Florida ordered the transfer of this cause to this court, pursuant to 28 U.S.C. § 1404. At that time, the only claims before the court were those of Star Brite Distributing, Inc. (SBDI) against Gavin and Geeslin. The court found that venue was proper in the Northern District of Mississippi, as all defendants were resident here. No party has challenged that ruling. It is not clear from the opinion of the Florida court whether

that decision was based on considerations of *forum non conveniens* or on defendants' claim of lack of *in personam* jurisdiction.

Thereafter, the defendants filed their answer and counter-claim against the plaintiff and later was allowed to amend to include third-party claims against Ocean Bio-Chem, Inc., Peter G. Dornau, Star-Brite Distributing (Canada), Inc., and F.K.M., Inc. The original claim by SBDI asserted that the defendants' efforts to levy against the assets of SBDI in the hands of third persons in pursuit of its judgment against the parent corporation was wrongful and damaged SBDI. Plaintiff had attempted to have this court amend that prior judgment to include SBDI, among others, but was rebuffed; in denying the motion to amend, the court pointed out that other, proper procedures existed, including the filing of counter-claims in the instant action. A copy of that opinion is appended hereto, and is incorporated by reference. The court incorporates into the record of this case, by judicial notice, the record of the prior related action, *Gavin v. Star Brite Corp.*, No. EC 84-75-D-D. (*Gavin I*)

## I. PERSONAL JURISDICTION

█ The burden of proof on the issue of *in personam* jurisdiction lies on the party asserting such jurisdiction. *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260, 1270 (5th Cir.1983); *Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 331–34 (5th Cir. 1982). The parties have not requested an evidentiary hearing, and the court is of the opinion that a rehearing is not necessary for a ruling in this matter.[1] Thus the burden laid upon the defendants is the presentation of a *prima facie* case for personal jurisdiction. *DeMelo, supra; Brown, supra; Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280,

1285 (9th Cir.1977). A *prima facie* showing at this stage of trial would not eliminate the need for a final determination at a later stage of this litigation. *DeMelo*, at 1271, n. 12. For purposes of the instant determination, the court will take as true the averments of the defendants and will disregard the assertions of the third-party defendants where those assertions are the subject of factual dispute.

█ In evaluating the issue of *in personam* jurisdiction, the court must apply a two-part test: "First, the law of the forum state must provide for the assertion of such jurisdiction: and second the exercise of jurisdiction under state law must comport with the dictates of the fourteenth amendment due process clause." *Smith v. Dewalt Products Corp.*, 743 F.2d 277, 278 (5th Cir.1984); *see Interfirst Bank Clifton v. Fernandez*, 844 F.2d 279 (5th Cir.1988). To satisfy the first step of this test, the defendants rely on the torts clause of the Mississippi long-arm statute. *Miss.Code Ann.* § 13–3–57. Plaintiff also alleges derivative jurisdiction through the doctrine of corporate disregard. *See Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358 (10th Cir.1974). The fourteenth amendment allows personal jurisdiction to be either "general" or "specific."

"General jurisdiction" is personal jurisdiction based on a defendant's contacts with the forum that are unrelated to the controversy. To exercise general jurisdiction, the court must determine whether the contacts are sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction. "Specific jurisdiction", on the other hand, is personal jurisdiction based on contacts with the forum that are related to the particular controversy. Even a single purposeful contact may in a proper case

---

1. The court notes that the court will have to consider the substance of the defendants' claims in determining the issue of jurisdiction; without determining issues reserved for the jury—at least in the absence of a motion for summary judgment—the court would be hindered in reaching a final determination of jurisdiction.

It appears, from a cursory reading of several cases, that the issue of corporate disregard is an

issue for the jury. *FMC Finance Corp. v. Murphree*, 632 F.2d 413 (5th Cir.1980); *Resorts International, Inc. v. Charter Air Center, Inc.*, 503 So.2d 1293 (Fla.App. 3 Dist.1987); *Church of Scientology of California v. Blackman*, 446 So.2d 190, 192 (Fla.App. 4 Dist.1984). The court does not here decide this issue, but leaves it open for the parties to address.

be sufficient to meet the requirement of minimum contacts when the cause of action arises from the contact. But to exercise specific jurisdiction, the court must examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice. (citations omitted.)

*Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir.1988). The defendants here do not plead general jurisdiction, but rather assert specific jurisdiction through the independent tort theory and through the piercing of the corporate veil. On the theory that the plaintiff and the third-party defendants have committed a fraud against the defendants, the court notes that it has been found to be sufficient for purposes of the fourteenth amendment that jurisdiction be based on an act occurring outside the forum state which did caused injury within the forum state. *See Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (publication of a newspaper). As the defendants have made out a *prima facie* case of fraud against the plaintiff and third-party defendants, such fraud occurring in part in Mississippi and being intended to and allegedly injuring in fact persons within Mississippi, the court is convinced that the fourteenth amendment is satisfied in the instant case. *Alford v. Whitsel,* 322 F.Supp. 358 (N.D. Miss.1971).

### a. *Star Brite Distributing, Inc.*

■ Defendants cite Wright & Miller, *Federal Practice and Procedure,* for the proposition that a plaintiff may not object to venue or personal jurisdiction for purposes of adjudicating either a permissive or a compulsory counter-claim. *Id.,* § 1416 (compulsory), and § 1424 (permissive).

SBDI's sole response is that it is not in this court voluntarily; this court must disagree. Plaintiff brought its claims against Gavin and Geeslin in Florida. That court found transfer of venue to be proper, and the plaintiff has not objected to that ruling. Plaintiff certainly did not object so strenuously to "being haled into" this court that it voluntarily dismissed its complaint rather than try its claims here. Plaintiff is, for purposes of this motion, voluntarily in this court. Plaintiff may not now object to this court's exercise of jurisdiction over it for purposes of deciding the counterclaim.

### b. *Third–Party Defendants*

■ Ocean Bio–Chem was found liable to David Gavin for patent infringement in the prior litigation in this court.[2] That judgment has been upheld on appeal by the Federal Circuit. The instant counter-claim arises out of that judgment, and the actions of Ocean Bio–Chem in the preparation for litigation of that cause. The court thus finds that third-party defendant Ocean Bio–Chem is amenable to suit in this court on the defendants' cause of action for fraud.[3] Similarly, the court finds, as a preliminary matter, that the defendants have set forth a *prima facie* case of fraud against the remaining third-party defendants.[4] (*See* discussion of fraud claim, *infra.*)

■ Further, the defendants have asserted a third-party claim for disregard of the corporate identity between the parent and the subsidiary corporations, and between each of them and Peter G. Dornau. As discussed below, the defendants have presented a *prima facie* case under this theory, as well; the court holds that the defendants have established, to the court's satisfaction, a *prima facie* case for piercing the corporate veil, which is, in turn, sufficient to establish a *prima facie* case

2. The corporation was then known as Star Brite Corporation.

3. Additionally, it should be noted that Ocean Bio–Chem, Inc. did not object to personal jurisdiction in *Gavin I.* It could perhaps cogently be argued that Ocean Bio–Chem should be bound by that waiver of the issue in this intimately related action. The court need not reach this

issue at this time, in light of the disposition of the motions to dismiss or transfer the cause on other grounds.

4. The defendants have also, in the court's view, established a *prima facie* case of fraud against plaintiff/counter-defendant Star Brite Distributing, Inc.

for the exercise of personal jurisdiction over the plaintiff and third-party defendants, with the exception of Peter Dornau.

### c. *Fraud*

█ *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires this court to apply the law of Mississippi, including Mississippi's conflict of laws rules, to the state law issues presented. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The Mississippi Supreme Court follows the center of gravity test of the Restatement (Second) of Conflicts of Law, § 6 and has ruled that different issues within the same case may be governed by the law of different states. *Boardman v. United Services Auto. Association*, 470 So.2d 1024, 1031 (Miss.1985), *answer to certified question conformed to* 768 F.2d 718 (5th Cir.1985), *cert. denied* 474 U.S. 980, 106 S.Ct. 384, 88 L.Ed.2d 337 (1985). As to the defendants' counter and third-party claims of fraud, the bulk of the allegedly fraudulent activity took place during discovery in *Gavin I*. That trial was conducted in this court, and discovery was conducted under the aegis of this court, but it is unclear where each of the representations at issue in the instant action took place. The parties have yet to address the conflict of laws question; accordingly, the court does not determine at this juncture the law applicable to the defendants' claim of fraud. The court thus analyzes the issue under both Mississippi and Florida substantive law.

The history of the efforts of the defendants to collect the judgment awarded David Gavin is set out in the appendix to this opinion, along with details of the alleged misrepresentations made. The substance of the alleged misrepresentations is that the parent corporation was the entity responsible for the manufacture and sale of the infringing products. One letter is particularly enlightening. Prior to trial,

plaintiff informed the court that in his understanding defendant Star Brite Corporation sold its products to wholly-owned subsidiaries which in turn sold to third parties, and that the defendant's sales figures should therefore be taken with a grain of salt. This constituted the closest plaintiff would come to an understanding of the corporate interrelationships of the Star Brite family. Star Brite responded through counsel by letter dated December 20, 1984:

Dear Judge Senter:

This matter is pending before you on the plaintiff's motion for severe sanctions. After reviewing plaintiff's rebuttal memorandum, my client asked that I clarify a statement of fact contained in that brief.

On page 3 of the brief, plaintiff states that Star Brite sells to wholly owned subsidiaries. My client assures me that this is not true and that in fact Star Brite's sales are to third parties over whose pricing Star Brite has absolutely no control.

If Your Honor desires, I will be happy to support this representation by affidavit.

The pattern of misrepresentations made by Star Brite Corporation, particularly by its president Peter Dornau, may be taken as evidence of an intentional misrepresentation upon which Gavin was expected reasonably to rely. This forms the basis of an action for fraud in either state. *Barroso v. Respiratory Care Services, Inc.*, 518 So.2d 373 (Fla.App. 5 Dist.1987); *Franklin v. Lovitt Equipment Co., Inc.*, 420 So.2d 1370, 1373 (Miss.1982).[5] The subsidiaries and Peter Dornau argue that the representations of Star Brite Corporation are not imputable to them, and that the representation of Peter Dornau were, according to this court, made in his capacity as corporate representative of Star Brite Corporation, and are thus similarly not imputable to the subsidiaries or to Dornau personally.

---

5. As the movants have not referred to any specific element of the defendants' claim of fraud upon which they have failed to bear their burden of proof, the court does not here consider in detail each of the secondary elements under the law of each state. Should the movants wish to assert specific failures of proof, they may accomplish that aim by motion for summary judgment after necessary discovery.

This argument has little merit. In the course of the formal analysis required by Gavin's motion to alter or amend the judgment of the court in *Gavin I*, the court did state that his statements were made in his capacity as corporate representative. That holding does not mean that the court has blinded itself to the fact that Dornau was President of the subsidiary corporations as well as president and majority shareholder of Ocean Bio–Chem, Inc. Nor is the court blind to the fact that the entities which stood to benefit from the confusion of Gavin and the court were the subsidiary corporations; the assertedly separate and independent parent corporation stood only to lose, as it would be liable for a judgment for activities for which it now claims it had no responsibility. Further, the companies of which he was president are held to know of his actions. *Symons Corp. v. Tartan–Lavors Delray Beach, Inc.,* 456 So.2d 1254 (Fla.App. 4 Dist. 1984). Dornau's misrepresentations are thus fully imputable to these corporations. If the corporate veil is pierced, then, of course, there is no need of imputation.

Further, it should be clearly noted that a director or officer such as Dornau may be held personally liable for torts committed by him on behalf of the corporation, regardless of the fact that the acts were done in the course and scope of his employment, and without recourse to the doctrine of corporate disregard. *See, e.g., White–Wilson Medical Center v. Dayta Consultants, Inc.,* 486 So.2d 659 (Fla.App. 1 Dist.1986); *Anden v. Litinsky,* 472 So.2d 825 (Fla.App. 4 Dist.1985); *Littman v. Commercial Bank & Trust Co.,* 425 So.2d 636, 640 (Fla.App. 3 Dist.1983); *Childers v. Beaver Dam Plantation, Inc.,* 360 F.Supp. 331 (N.D.Miss.1973), *citing Grapico Bottling*

*Co. v. Ennis,* 140 Miss. 502, 106 So. 97 (1925).[6] The court is thus of the opinion that the defendants have made out a *prima facie* of personal jurisdiction over the counter-defendant and each of the third-party defendants on the theory that they allegedly committed a tort in part in this state. *Miss.Code Ann.* § 13–3–57.

#### d. Corporate Disregard

Again, the parties have yet to address whether Mississippi's or Florida's substantive law should apply to the issue of corporate disregard. Defendants have made out a *prima facie* case under both Florida and Mississippi law for the exercise of personal jurisdiction over the counter and third-party corporate defendants under the theory of disregard of the corporate identity between the parent corporation, Ocean Bio–Chem, Inc., and its subsidiaries. The court is not convinced, on the limited record presently before it, that defendants have made such a case for corporate disregard of the legal division between Dornau and the corporations. As Dornau has been found to be subject to this court's *in personam* jurisdiction under an alternate theory, however, the failure to make out a *prima facie* case against him under this theory is not dispositive.

It is rare that a corporate veil is pierced to make a subsidiary corporation liable for the debts of its parent corporation. Frey, Alexander H., Jesse H. Choper, Noyes E. Leech, and C. Robert Morris, Jr., *Cases and Materials on Corporations,* 49, n. 37 (2d Ed.). This court has been unable to find a reported case under Florida or Mississippi law which directly addresses this situation.[7] The Fifth Circuit has dealt with this issue under Illinois law, in a diversity case which arose in the Northern District of Mississippi. In *FMC Finance Corp. v.*

---

**6.** The court notes one ready distinction in the law of fraud between the law of Florida and that of Mississippi: under Florida law, the burden of proof of fraud is by a preponderance of the evidence, rather than by clear and convincing evidence as is required by Mississippi law. *Compare Powerhouse, Inc. v. Walton,* 557 So.2d 186 (Fla.App. 1 Dist.1990) *with Beck Enterprises, Inc. v. Hester,* 512 So.2d 672, 675 (Miss.1987); *Vogel v. American Warranty Home Service Corp.,* 695 F.2d 877 (5th Cir.1983).

**7.** The courts of both states have repeatedly considered attempts to render the parent liable for the torts of a subsidiary. *See Dania Jai–Alai Palace, Inc. v. Sykes,* 450 So.2d 1114 (Fla.1987); *Gulf Stream Land & Development Corp. v. Wilkerson,* 420 So.2d 587 (Fla.1982); *Resorts International, Inc. v. Charter Air Center, Inc.,* 503 So.2d 1293 (Fla.App. 3 Dist.1987); *Rollins, Inc. v. Heller,* 454 So.2d 580 (Fla.App. 3 Dist.1984); *Kelly v. Precision Industries, Inc.,* 438 So.2d 29 (Fla. App. 5 Dist.1983); *Peacock v. General Motors Acceptance Corp.,* 432 So.2d 142 (Fla.App. 1

*Murphree*, 632 F.2d 413 (5th Cir.1980),[8] the court held that a relaxed standard of the control test for the "alter ego" element should be applied to cases in which a third party seeks to pierce the corporate veil between parent and subsidiary to reach the subsidiary's assets.[9] It appears to the court that this reasoning would apply under either Florida [10] or Mississippi law.

The Mississippi Supreme Court has adopted the standard elements of the corporate disregard doctrine. While Mississippi courts will not lightly pierce the corporate veil, they will not rigidly maintain distinct corporate entities where to do so would subvert the ends of justice. *Highway Development Company, Inc. v. Mississippi State Highway Commission*, 343 So.2d 477, 480 (Miss.1977). In a case arising out of a breach of contract, *Gray v. Edgewater Landing, Inc.*, 541 So.2d 1044 (Miss.1989), that court required, as a necessary element for piercing of the corporate veil, some showing of fraud or other equivalent misfeasance on the part of the party against whom the doctrine is invoked. Similarly, the Florida courts require fraud or other improper conduct in addition to the identity of the entities. *Dania Jai–Alai Palace, Inc. v. Sykes*, 450 So.2d 1114 (Fla. 1984). The use of the corporation to hide the assets of the alleged alter ego may constitute improper conduct. *Acquisition*

*Corp. v. American Cast Iron*, 543 So.2d 878, 882 (Fla.App. 4 Dist.1989).

The court is of the opinion that the actions of Ocean Bio–Chem, Inc. and its subsidiaries in this court are sufficient to satisfy the requirements of a *prima facie* case for piercing the corporate veil between them. As noted above, Ocean Bio–Chem, then known as Star Brite Corporation, held itself out as the manufacturer and seller of the infringing products; this misstatement benefitted its subsidiaries who were actually responsible for the manufacture and sale and would otherwise have been sued for infringement and was detrimental to the parent corporation, which would otherwise have had as a formidable defense to liability. As these corporations have so often reminded the court, Star Brite Corporation was the only party defendant at the trial of *Gavin I;* though the subsidiaries were not present, the parent strenuously argued through counsel against the motion to alter the judgment to add them as parties to the judgment, blurring further the distinctions between the corporations and promoting their interests to its own detriment.[11] The court knows of only two possible explanations for these selfless acts by Ocean Bio–Chem, Inc.: either the corporations had been run as one entity so pervasively and for so long that they simply no longer recognized the distinction themselves, or

Dist.1983); *Vantage View, Inc. v. Bali East Development Corp.*, 421 So.2d 728 (Fla.App. 4 Dist. 1982); *see also DeArmas v. P.J. Constructors, Inc.*, 402 So.2d 39 (Fla.App. 3 Dist.1981) (liability between sister corporations). *See United States v. State Tax Commission, State of Mississippi*, 505 F.2d 633 (5th Cir.1974), *reh'g denied* 541 F.2d 469 (5th Cir.1976) (Not sufficient evidence: similarity of names, shareholders and officers); *Houston Oil Field Material Co. v. Stuard*, 406 F.2d 1052 (5th Cir.1969) (elements: "near identity" and "injustice to third party"); *Porter v. Beloit Corp.*, 667 F.Supp. 367 (S.D.Miss. 1987); *North American Plastics, Inc. v. Inland Shoe Manufacturing Co., Inc.*, 592 F.Supp. 875 (N.D.Miss.1984) (cites 10 factors to pierce veil; same factors as Florida cases *Church of Scientology*, at 193, n. 4 and *Dania Jai–Alai*, at 599); *Johnson v. Warnaco, Inc.*, 426 F.Supp. 44 (S.D. Miss.1976); *Hernando Bank v. Bryant Electric Co.*, 357 F.Supp. 575 (N.D.Miss.1973) (sister corporations); *Home Telephone Co. v. Darley*, 355 F.Supp. 992 (N.D.Miss.1973), *aff'd*, 489 F.2d 1403 (5th Cir.1974); *Johnson & Higgins of Mississippi, Inc. v. Commissioner of Insurance of*

*Mississippi*, 321 So.2d 281 (Miss.1975) (refused to pierce veil: neither "mere instrumentality," nor sham, nor "fraudulently used" was shown).

8. This opinion was cited generally with approval by the Mississippi Supreme Court in *T.C.L., Inc. v. LaCoste*, 431 So.2d 918, 922 (Miss.1983).

9. The court notes that the instant action actually involves the acts of the subsidiaries in infringing the patent, as opposed to the more common situation in which the wrong was done by the parent.

10. It is arguable that Gavin and Geeslin would not need to pierce the corporate veil under Florida law. *See Rollins, Inc. v. Heller*, 454 So.2d 580, 583 (Fla.App. 3 Dist.1984); *Anden v. Litinsky*, 472 So.2d at 827. The court does not now determine this issue.

11. It was not until after the significance of this mode of doing business was pointed out by the court that the subsidiaries first attempted to provide for their own separate defense.

the corporate directors officers and/or shareholders determined to hide the group's corporate assets behind the thinly capitalized parent corporation. The testimony of Dornau in *Gavin I* at the hearing on the motion to amend the judgment—to the effect that he had been counselled before trial to "play his cards close to the vest" on this issue—indicates that the latter explanation is more likely than the former; either explanation undermines their arguments against piercing of the corporate veil.

There is thus evidence that the corporations have themselves blurred the distinctions between parent and subsidiaries, and that they have attempted to use the corporate form to hide the group's assets from the judgment holder, David Gavin, to his detriment. Gavin and Geeslin have thus made out a *prima facie* case for the exercise of *in personam* jurisdiction against Ocean Bio–Chem, Inc. and its subsidiaries under this theory, as well.[12]

## II. VENUE

■ In *Gavin I*, Star Brite Corporation, then third-party defendant, filed a similar motion to dismiss the patent infringement claim against it for improper venue as defined by 28 U.S.C. § 1400(b). That section provides, in pertinent part, that an action for patent infringement may be brought "where the defendant has committed acts of infringement and has a regular and established place of business." The court denied the motion to dismiss, citing Wright & Miller, *Federal Practice and Procedure:* Civil § 1445 (1971); "the statutory venue limitations have no application to Rule 14 claims even if they would require the third-party action to be heard in another district had it been brought as an independent action." [13] Defendant Ocean Bio–Chem, Inc., is collaterally estopped from relitigating this matter. As to the other third-party

defendants, the court reaffirms its holding in *Gavin I;* the motion of the third-party defendants to dismiss or to transfer for improper venue is denied.

■ As to the plaintiff, Star Brite Distributing, Inc., the court notes the existence of clearly contrary authority. *See General Electric Co. v. Marvel Rare Metals Co.,* 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932); 1A–Pt. 2 *Moore's Federal Practice,* para. 0.344[9]. The *General Electric* case held that the venue of counterclaims was not restricted by the predecessor of § 1400(b). The instant case is controlled by that holding despite the fact that this district does not represent the plaintiff's first choice of venue. Plaintiff brought the instant action, and the venue of that action has been found to be proper in the Northern District of Mississippi. Defendants may bring their counter-claim for patent infringement against the plaintiff, despite the provisions of 28 U.S.C. § 1400(b).[14]

The court is accordingly of the opinion that the motions of the plaintiff and third-party defendants to dismiss or to transfer the venue of this cause are without merit and should be denied. An order in conformity herewith shall issue.

## APPENDIX

In the United States District Court

for the Northern District of Mississippi

Eastern Division

David C. GAVIN, Plaintiff,

v.

STAR BRITE CORPORATION n/k/a OCEAN BIOCHEM, INC., Defendant.

Civ. A. No. EC 84–75–D–D.

Filed Nov. 1, 1989.

MEMORANDUM OPINION

Plaintiff, David Gavin, is the holder of United States patent No. 4,181,622 on "a

---

12. Gavin and Geeslin have not yet put sufficient evidence before the court on this theory against Dornau. This finding does not, of course, preclude them from discovering and producing such evidence at a later stage of this litigation.

13. The current edition of Wright & Miller restates this provision. *See* Wright & Miller, *Federal Practice & Procedure:* Civil § 1445 (1990).

14. The court again notes the existence of the defendants' claim to pierce the corporate veil among opposing parties; the court notes that if venue against one is proper, then the defendants have made out a *prima facie* case for proper venue over the others, with the exception of Peter Dornau.

composition for removal of algae, marine residue, marine vegetation, and stains on surfaces and resulting from the immersion of such surfaces in natural bodies of water, comprising from about 5 to 20 parts by weight of an acid selected from oxalic, citric, phosphoric, or mixtures thereof dissolved in a solution comprising from about 10 to 20 parts by weight of a C–1 to C–3 alkanol and 80 to 90 parts by weight of water...." On August 4, 1987, this court entered a judgment in favor of plaintiff against third-party defendant Star Brite Corporation n/k/a Ocean BioChem, Inc.,[1] in the amount of $214,850 plus prejudgment interest for the willful infringement of plaintiff's patent. The court also enjoined "Star Brite Corporation, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this Judgment by personal service or otherwise, including, but not limited to, Excelda Manufacturing Company, Boat US, and E & B Marine", from further infringing plaintiff's patent "including, but without limitation, by the manufacture, use or sale of Star Brite Instant Hull Cleaner, Star Brite Teak Brightener, Boat US Hull Cleaner, Boat US Teak Brightener, Bow and Stern Hull Cleaner, and Bow and Stern Teak Brightener." A welter of matters are currently before the court; the court will deal with each of these matters in turn.

## I.

*Plaintiff's Motion for Contempt*

Facts

Defendant continues to market the six products named in this court's injunction.

On June 15, 1987, immediately upon entry of the injunction, defendant ordered modifications to be made in the formula of these products, and for any existing stock to be destroyed. Defendant's counsel purportedly gave an oral opinion that these modifications would be sufficient to take the products outside the scope of plaintiff's patent. No written opinion was given, and the attorney, Mr. Bernstein, testified that he consulted with his partners and then rendered his opinion a few days later. Defendant's third[2] formula was to consist of:

| | |
|---|---|
| oxalic acid: | 8 percent |
| methanol: | 2 percent |
| "Dowanol EB:" | 2 percent |
| water: | 80 percent |

In March 1989, defendant again altered the formula of its six products. Again, Mr. Bernstein gave an oral opinion of non-infringement, this time on one day's consideration, and a discussion with one of his partners. This formula is in use to this day. Defendant's fourth formula was to consist of:

| | |
|---|---|
| oxalic acid: | 7 percent |
| Dowanol EB: | 5 percent |
| water: | 88 percent. |

Plaintiff introduced the testimony of Dr. James Minyard, state chemist and professor at Mississippi State University, who had supervised the testing of samples of Star Brite Instant Hull Cleaner, Star Brite Teak Brightener, Boat US Hull Cleaner, and Boat US Teak Brightener. The samples, received for testing on February 16, 1989, had been purchased by plaintiff in December 1988. The results of these tests are as follows:

---

**1.** For purposes of clarity, the court will continue to refer to "Star Brite Corporation" though the corporation has now officially changed its name.

**2.** Prior to the trial of the infringement action, defendant had modified its formula to include a small amount of an ether in place of a portion of the alcohol. Judgment was entered holding that both formulations infringed plaintiff's patents.

## RESULTS:

| Lab No. | 762,293 | 762,294 | 762,295 | 762,296 |
|---|---|---|---|---|
| Sample Marked | Star Brite Instant Hull Cleaner | Star Brite Teak Brightener | Boat US Hull Cleaner | Boat US Teak Brightener |

### PERCENT

| | | | | |
|---|---|---|---|---|
| Oxalic Acid (By wt.) | 7.07 | 9.02 | 8.38 | 8.92 |
| Methanol (By wt.) | 2.7 | 2.6 | 1.7 | 2.6 |
| Water: By Difference (By wt.) | 90.2 | 88.4 | 89.0 | 88.5 |
| By Distillation | 90.5 | 89.8 | 89.5 | 89.7 |
| 2-Butoxy ethanol | * | * | * | * |

\* Identified by gc/ms but not quantified; other names for the compound are Butyl cellosolve and Ethyleneglycol monobutyl ether. Summation of Acid, Methanol, and water indicate that there is less than 1% of 2-Butoxy ethanol.

METHODOLOGY:

Oxalic Acid–Identified by infrared spectroscopy (IR) and quantified by potassium permanganate titration.

Methanol–Identified by gas chromatography/mass spectrometry (gc/ms) and quantified by flame ionization gas chromatography.

Water–Determined by toluene distillation; a calculated difference was also determined by subtracting the percent methanol from the total percent distilled from immiscible solvent.

---

There were questions raised whether plaintiff's sample was of the third or fourth formula, but in light of the fact that plaintiff's sample contained both methanol and a 2-butoxy ethanol, it appears that the sample reasonably could only have been drawn from the defendant's fourth formulation.

Similar tests had been run by Dr. Minyard on defendant's original formulation for the trial of this cause, with the following results:

| | Star Brite Instant Hull Cleaner | | Star Brite Teak |
|---|---|---|---|
| | Sample 1 | Sample 2 | Brightener |
| Oxalic Acid | 8.64 | 8.60 | 8.68 |
| 2-propanol (isopropyl alcohol) | 6.18 | 6.21 | 5.75 |
| Water: by difference | 85.18 | 85.19 | 85.57 |
| by distilation | 87.00 | 84.84 | 85.58 |
| Silica | trace | —— | —— |

(All measurements are expressed in terms of percent by weight)

### Legal Analysis

Plaintiff herein has moved this court to impose civil or criminal contempt sanctions on the defendant, alleging continued infringement of plaintiff's patent in violation of this court's injunction. A party enjoined in a patent infringement action "is entitled to design around the claims of a patent without the threat of contempt proceedings with respect to every modified device *although he bears the risk that the enjoining court may find changes to be too unsubstantial to avoid contempt.*" *K.S.M. Fastening Systems v. H.A. Jones Co.,* 776 F.2d 1522, 1526 (Fed.Cir.1985) (emphasis added).

Although the Court of Appeals for the Federal Circuit now exclusively handles appeals in patent cases, the standards for contempt are applied in accordance with prevailing rules in the several federal appellate circuits. *Graves v. Kemsco Group,* 864 F.2d 754 (C.A. Fed.1988).

Failure to obey a court order, including an injunction, is punishable as contempt of court. *GTE Sylvania, Inc. v. Consumer's Union,* 445 U.S. 375, 100 S.Ct. 1194, 63 L.Ed.2d 467 (1980). Contempt may be civil or criminal, based upon the character, nature and purpose of the relief. *Hicks on behalf of Feiock v. Feiock,* 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *Thyssen, Inc. v. S/S Chauenon,* 693 F.2d 1171, 1172 (5th Cir.1982).

Criminal contempt is punitive and imposed to vindicate the authority of the court, while civil contempt is wholly remedial and designed to enforce compliance or to compensate a party injured by the failure to comply. *Whitfield v. Pennington,* 832 F.2d 909 (5th Cir.1987), *cert. denied sub nom. Pennington v. McLaughlin,* 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988); *compare K.S.M. Fastening Systems,* at 1524.

In a criminal contempt action, the elements of proof are (a) that a clear and definitive order existed, (b) that the contemnor knew of the order, and (c) that the contemnor wilfully disobeyed the order. Contempt will not lie for violations of an order unless the order is clear and decisive and contains no doubt about what is required. *NLRB v. Express Publishing Co.,* 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930 (1941); Persons without knowledge of the order cannot be held in contempt. *Re Rumaker,* 646 F.2d 870 (5th Cir.1980); Willfulness includes both a contemptuous act and a willful, contumacious or reckless state of mind. *Re Joyce,* 506 F.2d 373 (5th Cir.1975).

In civil contempt, the elements are similar but the differences are important. A judgment of civil contempt requires a showing (a) that the order is/was in effect, (b) that the order required certain conduct, and (c) that the contemnor failed to comply with the known order. *Petroleos Mexicanos v. Crawford Enterprises, Inc.,* 826 F.2d 392 (5th Cir.1987). Thus, it can be said that a party is in civil contempt if that party fails in "meaningful respects" to achieve substantial and diligent compliance with a clear and unambiguous decree. *Lelsz v. Kavanaugh,* 673 F.Supp. 828 (N.D. Tex.1987). However, willfulness is not an issue and not relevant in civil contempt actions. *Northside Realty Associates v. U.S.,* 605 F.2d 1348, 1352 (5th Cir.1979).

In contempt, the burden of proof is on the party alleging contempt, *Combs v. Ryan's Coal Co., Inc.,* 785 F.2d 970 (11th Cir.1986), *cert. denied sub nom. Simmons v. Combs,* 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 120 (1986); although once a *prima facie* case is made, the burden of proof shifts to the contemnor to show defenses or mitigating circumstances. *Piambino v. Bestline Products, Inc.,* 645 F.Supp. 1210 (S.D.Fla.1986). The standard of proof required in a criminal contempt action is the standard of "beyond a reasonable doubt." *U.S. v. McCargo,* 783 F.2d 507 (5th Cir. 1986). In a civil contempt action, the standard is "clear and convincing." *Whitfield v. Pennington,* 832 F.2d 909 (5th Cir.1987), *cert. denied sub nom. Pennington v. McLaughlin,* 487 U.S. 1205, 108 S.Ct. 2846, 101 L.Ed.2d 883 (1988).

The court's injunction called for defendant and those associated with the defen-

dant to refrain from manufacturing and selling the products which had been found to infringe the plaintiff's patent. It is clear that, while defendant still markets these six products, defendant would not be liable for contempt unless those products were no more than colorably changed from the product formulation found to be infringing, *American Foundry and Manuf. Co. v. Josam Manuf. Co.*, 79 F.2d 116, 118 (8th Cir.1935), and the new formulation infringed the patent. *K.S.M. Fastening Systems*, at 1528–29; *Preemption Devices v. Minnesota Mining and Manuf. Co.*, 803 F.2d 1170, 1175 (Fed.Cir.1986).[3]

None of the experts called by either party to testify at the hearing on this motion spoke to the similarity of the two modified formulae to the enjoined formula; they spoke instead to the question of whether the modified formulae were similar to or infringed the plaintiff's patent. The court has considered the testimony of the experts on that point, and finds the testimony of defendant's patent law experts to be singularly unhelpful. Out of an abundance of caution, the court allowed defendant to call experts in the field of patent law due to the unique nature of patent cases, and the nature of the issue before the court. However, the testimony elicited provided no new insight into the law of contempt in patent cases, but merely represented the general views of these hired attorneys on the ultimate issue of infringement of the patent.[4] The court thus discounts the opinions of Dr. Allen Bernstein and Mr. Joseph Zallen.

Given the fact that the proportions of oxalic acid and the alcohol are outside the express terms of the patent, and given the use of Dowanol–EB, which does not appear in the patent at all, the court is, however, of the opinion that the change made in defendant's formulations of the infringing products is more than colorable, and is thus sufficiently substantial so as to make decision on this matter in a summary contempt action improper. Accordingly, plaintiff's motion for the imposition of civil or criminal contempt sanctions on the defendant should be, in the opinion of this court, denied.

## II

### *Motions to Alter or Amend Judgment*

#### a. Rule 60(b)(2), (3), and (6)

Plaintiff has abandoned his motions pursuant to Rule 60(b)(2) and (3), acknowledging his request thereunder to be untimely. Similarly, it appears that plaintiff has recognized that he cannot claim fraud under Rule 60(b)(6), and thus avoid the one-year limitation applicable to sub-section

---

**3.** Plaintiff argues that the injunction should be read as requiring defendant to cease the manufacture and sale of any product using the same brand names as were listed in the injunction. This argument lacks merit. First, the court believes that its intention to enjoin the production of only the infringing formulation was clear. Second, injunctions as broad as plaintiff's proposed reading are disapproved. *See K.S.M. Fastening Systems*, at 1525–26, and cases cited therein. And third, such a reading would not constitute a clear order of the court for purposes of a motion for contempt.

**4.** Mr. Bernstein testified in part as a fact witness, to the effect that he had given defendant two oral opinions that the defendant's two proposed modifications did not infringe plaintiff's patent. His factual testimony will be considered on the issue of willfulness. Mr. Bernstein otherwise testified in a conclusory manner, stating that in his opinion, the modified formulae did not infringe. His testimony did not explain in detail the reasoning he claimed should be adopted in the consideration of this area of patent law, nor even draw the court's attention to applicable precedent. In short, defendant's use of his testimony was merely an attempt to invade the province of the court. Mr. Zallen, despite his admitted knowledge of the law of this case in this action, specifically the application of the doctrine of equivalence to the plaintiff's patent, nonetheless espoused the novel, and unsupported, view that this doctrine has no application to the instant patent because of the "narrowness" of the patent. He failed to otherwise address the doctrine, or the use of the term "about" in regard to the proportions given in the applicable patent claims, and instead solely espoused a mechanical application of the ratios listed in the patent in the formulae presented him. His testimony thus advanced the legal understanding of this court not at all. Mr. Zallen also testified on the matters of basic chemistry; to the extent that such testimony has added to the court's understanding of the matter at bar, such testimony shall be considered.

60(b)(3). *See* 7 *Moore's Federal Practice* Paragraph 60.27[1] at 60–266.

Accordingly, this court will formally deny plaintiff's motions made pursuant to Federal Rules of Civil Procedure 60(b)(2), (3), and (6) to alter or amend this court's judgment on grounds of newly discovered evidence and fraud.

### b. Savings Clause Rule 60(b)

### Facts

As noted previously, plaintiff pursued an action for patent infringement to judgment against third party defendant Star Brite Corporation. That judgment was upheld on appeal by the Court of Appeals for the Federal Circuit. Star Brite posted no supersedeas bond for that appeal. After completion of that appeal, plaintiff sought to collect on the judgment of $214,850; on January 12, 1989, Michael Schienvold, an attorney for Star Brite, responded to the plaintiff's demands. Defendant's attorney offered plaintiff less than half the amount of plaintiff's judgment in "settlement"— payments totaling $100,000 over a one-year period. Defendant's attorney went on to state:

> Initially, you rejected the settlement. Perhaps a few additional points will serve to facilitate our discussions. Star Brite Corporation changed its name some years ago and no entity now exists that does business under the name Star Brite Corporation. The entity that formerly did business as Star Brite Corporation is, as you have previously been advised, a publicly traded reporting company that is the mechanism for reporting sales and other financial data for a number of independent operating companies. A copy of SEC form 10Q for the quarter ending September 30, 1988 is enclosed for your review. The reporting entity, your judgment debtor, has minimal assets all of which has (sic) been pledged to its commercial lenders. In fact, all of the assets of the various operating companies have also been pledged to commercial lenders. The judgment debtor makes no sales and collects no monies from customers of the operating companies. All sales by the independent operating companies are completed independently of your judgment debtor. The various operating companies are active independent corporations. These operating companies are not liable for this judgment and are in no way parties to this judgment. Any attempt to levy on their assets or garnish their customers would be improper since they are not judgment debtors. We specifically call your attention to Wal–Mart Corporation as a customer of one of the independent operating companies and *not* a customer of your judgment debtor. In light of these facts, please be advised that we would view any action by you against any of the independent operating companies as an attempt to extort money from them to pay a judgment for which they are not liable and as business slander against them. These companies are not judgment debtors and should not be made to suffer the possible embarrassment and interruption of business that judgment debtors must, at times, endure.

The corporate structure of judgment debtor Star Brite Corporation and its wholly-owned subsidiaries Star Brite Distributing, Inc., Star Brite Distributing (Canada), Inc., and F.K.M., Inc. was not made fully clear to the plaintiff or to the court until the hearing held on the instant motions. It is now asserted by the parent corporation[5] that it has no role in either the manufacture or sale of the products which were the subject of the plaintiff's infringement action, or of any other products. Star Brite Corporation now claims that its subsidiaries actually manufacture and sell the products and retain the proceeds therefrom.

This version does not square with the testimony of Peter Dornau at trial. Mr. Dornau is the majority shareholder of Star Brite Corporation, the president of that corporation, and also president of the subsidiary corporations. He testified at the trial of this action and in the hearing held on

---

5. As Star Brite Corporation has so often reminded this court, it is the sole party before the court in this matter.

this motion, as corporate representative of the defendant Star Brite Corporation. It should be borne in mind that he did not testify on behalf of the subsidiaries, and that the subsidiaries were not parties to that action or otherwise before the court. Mr. Dornau referred repeatedly to "Star Brite's" sales and contracts. For example:

Q. Is Star Brite's Instant Hull Cleaner one of your products that Star Brite manufactures, distributes, and sells?

A. Yes. Instant Hull Cleaner is one of many products we manufacture.

Q. Alright.

A. It is one of 84.

Q. And Star Brite Teak Brightener is one of the products that you manufacture and sell?

A. That is correct.

Tr. p. 148, line 24 to p. 149, line 7.

A. .... For instance, right at this moment today, I should be in Bentonville, Arkansas, meeting with Wal–Mart for our entire 1988 program....

Q. So you hope to sell a lot of stuff to Wal–Mart in 1988?

A. I sure am, hope we do. We need it, yes.

.    .    .    .    .

A. ... The same as we would not ship to the local Wal–Mart Store—and I don't know if they carry our product, because it is selectively where they are putting it—but we sell Wal–Mart through their wholly owned distributor—whose name is Abeco in Bentonville, Arkansas. So when we do things, we ship to a warehouse, and then it comes into an area like here. So when you ask me are we all throughout the United States, we would like to think we are, but we are never quite sure where the major distributor sells.

Tr. p. 151, line 14 to p. 152, line 19.

Q. ... Now, the sales of Star Brite Instant Hull Cleaner and Star Brite Teak Brightener, whether it be in Aberdeen or Iuka or Miami or—is it all done by the company that you are the president of, Star Brite Corporation?

A. It originates at Star Brite, yes.

Q. Alright, are there any other corporations, subsidiaries, or affiliates of that corporation that we need to concern ourselves with?

A. Well, in Canada, we do have a company called Star Brite Canada only for purposes of separating it. But it all comes under the same threshold.

Tr. p. 153, line 17 to p. 154, line 2.

Mr. Dornau then went into greater detail about Star Brite's sales for the period in question. He purported to give sales figures which included sales by Star Brite in Canada, for purposes of figuring damages. Further, Dornau stated that Star Brite had manufactured and sold products to other corporations, which were identical in their formulae with those of its own products that were found to infringe plaintiff's patent; specifically, Star Brite sold identical products under private labels to Boat U.S. and Goldberg's Marine. The examination of Dornau then continued:

Q. Alright, sir. Now, tell me—I asked you a question a while ago, maybe I misunderstood your answer, but I asked you about manufacturing, both the manufacture of a Star Brite Product and the manufacture of the private label products. Do you actually manufacture those products?

A. No. Only in a technical sense.

Q. Well, explain what you mean by that.

A. Well, we are a very small company. We can't afford to have the facilities to put all these chemicals together, bottle them, ship them, and have the personnel to do it. What we do then is we go to an outside, what is referred to as contract packager, and we give them formulations, they give us formulations, and in turn we go to them with various specifications as to the bottle, the type of label we are going to do; some things we buy, some things they buy, and they deliver as a finished

package ready to sell at their particular factory....

Q. [text] A. They first notify us that it is ready. Then we would ship it into a warehouse for further distribution....

Q. Alright. So far as the products we are concerned with in this lawsuit, Excelda is the manufacturer; is that correct?

A. The manufacturer for Star Brite, yes.

Tr. p. 178, line 16 to p. 180, line 4. *See also* Tr. at p. 339, line 24 to p. 340, line 4. (Testimony of Jeffrey Tieger, Star Brite Corporation Director of Advertising and Marketing, stating that his function was to develop products and put them physically in production and to get them to the distribution points).

Defendant Star Brite, through its attorneys, entered into several stipulations of fact, read by the court to the jury at the trial of the infringement action, including "(e) Star Brite Corporation's first sale of Star Brite Instant Hull Cleaner occurred during the fourth quarter of the calendar year, 1982." Twelve stipulations were also made regarding Star Brite's gross sales figures for subsequent quarters.

Further, prior to trial, plaintiff informed the court that it was his understanding that defendant Star Brite Corporation sold to wholly owned subsidiaries which in turn sold to third parties. While plaintiff had not yet discovered the exact corporate nature of the defendant and its subsidiaries, plaintiff's version was closer to the truth as now told than he had previously come. Defendant responded through counsel by letter to the court dated December 20, 1984.

Dear Judge Senter:

This matter is pending before you on the plaintiff's motion for severe sanctions. After reviewing plaintiff's rebuttal memorandum, my client asked that I clarify a statement of fact contained in that brief.

On page 3 of the brief, plaintiff states that Star Brite sells to wholly owned subsidiaries. My client assures me that this is not true and that in fact Star Brite's sales are to third parties over whose pricing Star Brite has absolutely no control.

If Your Honor desires, I will be happy to support this representation by affidavit.

At the hearing on this matter, Mr. Dornau attempted to explain his inconsistent testimony at trial by saying (a) that he was speaking of the subsidiaries when he referred to "Star Brite" and (b) that on the advice of his attorney prior to the trial, he did not volunteer any information on the corporate structure; he was "playing his cards close to the vest." As previously noted, and as relied on often by defendant in opposing plaintiff's motions, the subsidiaries were not before this court. The parent corporation was the only party defendant, and Dornau was present only as the representative of the parent corporation. Dornau's second explanation further undermines his first, indicating his awareness of plaintiff's misunderstanding and also an awareness of the possible tactical advantages to be gained from keeping the plaintiff and the court in the dark as to defendant's true corporate structure. Having considered these inconsistencies and the demeanor of the witness, the court finds Dornau's first explanation unconvincing. His second explanation further is evidence of some knowledge or actual connivance by an attorney who is connected with the defendant in the fraud perpetrated by Peter Dornau. The court is aware of three attorneys involved in the present matter: John W. Crowell of Columbus, Mississippi; Michael Paul Shienvold of Fort Lauderdale, Florida; and Allen H. Bernstein of Philadelphia, Pennsylvania. The court is not yet certain to whom Mr. Dornau referred, or what knowledge each of these three attorneys had.

### Legal Analysis

Plaintiff asserts that the defendant's conduct constitutes fraud on the court, and moves this court to exercise its inherent powers—cited in the savings clause of Federal Rules of Civil Procedure 60(b)—to amend the prior judgment of this court. Plaintiff thus seeks to add the three subsi-

diaries to the judgment for damages. Star Brite Corporation has argued at length on behalf of the other parties which are not before the court against allowing such an amendment.

Simple fraud is actionable under Rule 60(b)(3) within one year of judgment. The one-year limitation represents a liberalization of the prior "term rule", but operates in much the same way for the same reasons.

> Federal courts, both trial and appellate, long ago established the general rule that they would not alter or set aside their judgments after the expiration of the term at which the judgments were finally entered. This salutary general rule springs from the belief that in most instances society is best served by putting an end to litigation after a case has been tried and judgment entered.... From the beginning there has existed alongside the term rule a rule of equity to the effect that under certain circumstances, one of which is after-discovered fraud, relief will be granted against judgments regardless of the term of their entry. This equity rule ... the courts have developed and fashioned to fulfill a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the term rule.

*Hazel–Atlas Glass Co. v. Hartford–Empire Co.*, 322 U.S. 238, 244, 64 S.Ct. 997, 1000, 88 L.Ed. 1250, 1254 (1944).

> Rule 60(b) provides, in pertinent part: This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C. § 1655, or to set aside a judgment for fraud upon the court.

The authorities have treated the first and third savings clauses of Rule 60(b) as es-

tablishing two procedurally distinct remedies[6] for fraud in certain situations, after the time for relief under 60(b)(3) has run.

## Independent Action

The first savings clause states that the Rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding. Perhaps the chief, although certainly not the exclusive, basis for the independent action is fraud; and while there is some authority that intrinsic fraud will support such an action the general view is that the fraud must be extrinsic. The independent action may, but need not, be brought in the federal district court which rendered the judgment; and the time limitation upon such an action for relief from a federal judgment normally is laches.

## Fraud Upon the Court

The third saving clause states that the Rule does not limit the power of a court "to set aside a judgment for fraud upon the court." This clause was added by the 1946 revision; and recognizes the inherent power of a court to grant relief when fraud has been perpetrated upon it. This inherent power is to be exercised by the court on whom the fraud is practiced, district or appellate, as the case may be.

7 *Moore's Federal Practice*, Paragraph 60.-33 at 60–350.

Fraud on the court is a term of art; common fraud or even perjury are not sufficient to trigger the court's equitable powers to set aside its judgment. "In order to set aside a judgment or order because of fraud upon the court under Rule 60(b), ... it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir.1978) *citing England v. Doyle*, 281 F.2d 304, 309 (9th Cir.1960).

Generally speaking, only the most egregious misconduct such as bribery of a

---

**6.** Another reading of the rule would require that an independent action be brought for any relief under the savings clause. The comments to the 1946 amendment to rule 60(b) tend to such a

reading. This court finds the more liberal reading persuasive, especially in light of the treatment of the rule in subsequent cases and authorities.

judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute fraud on the court. *See Hazel–Atlas Glass Co. v. Hartford–Empire Co.,* 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944); *Root Refin. Co. v. Universal Oil Products,* 169 F.2d 514 (3rd Cir.1948); *J. Moore's Federal Practice,* Paragraph 60.33 at 510–11. Less egregious misconduct, such as non-disclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court. *See Kupferman v. Consolidated Research and Manufacturing Co.,* 459 F.2d 1072 (2nd Cir.1972); *see also England v. Doyle,* 281 F.2d 304, 310 (9th Cir.1960).

*Rozier v. Ford Motor Company,* 573 F.2d at 1338, *quoting United States v. International Telephone & Telegraph Corp.,* 349 F.Supp. 22, 29 (D.Conn.1972), *aff'd without opinion* 410 U.S. 919, 93 S.Ct. 1363, 35 L.Ed.2d 582 (1973).

Plaintiff's pleadings do not clearly indicate which of these two clauses plaintiff wishes to travel under.[7] Defendant raises, in opposition, several defenses; as the court finds that it cannot grant the sort of relief requested by plaintiff, the court does not reach defendant's other defenses. Gavin seeks, without providing authority therefor, to extend dramatically the traditional relief provided under a court's equitable powers. The cases which have come to the court's attention under the equitable power involve an unsuccessful litigant, almost always the defendant to an action,[8] attacking the validity of a judgment against him. Gavin, the successful plaintiff in the trial of this case, asks this court to modify the judgment he took against Star Brite Corporation to make it

payable from the assets of the three wholly owned subsidiaries of Star Brite Corporation, making them parties to the judgment.

As often noted above, these subsidiaries were not before the court when judgment was rendered on plaintiff's patent infringement claims. It now appears, from the testimony of Peter Dornau at the hearing held on these motions, that the subsidiaries were responsible for the manufacture and sale of the infringing products. However, the judgment debtor does not thus seek relief from the judgment against it, nor even seek to have the codefendants added to share the burden of the judgment; Star Brite Corporation now seeks, as it has throughout these proceedings, to protect its subsidiaries. Plaintiff has not yet "pierced the veil", and thus this court must presume that these are separate entities. Adding these entities to a final judgment, without providing them with notice, hearing, right to confrontation, etc. would implicate the most basic protections of due process.

There is some question whether the court would have the authority to examine evidence on the possibility of corporate disregard if fraud on the court were proven. Fraud on the court is a matter which can be raised and pursued by the court *sua sponte,* 7 *Moore's Federal Practice,* Paragraph 60.33 at 60–354; thus, it would be within the power of the court to consider suitable remedies. It is not clear, however, that "piercing the veil", or adding parties to an existing judgment are remedies available under the equitable power for fraud on the court. Rule 60(b) leaves intact the court's power *"to set aside* a judgment for fraud upon the court." (emphasis added) This language is not dispositive, as Rule 60(b) merely identifies existing powers of

**7.** There is authority for treating an independent action under rule 60(b) as a motion, *see* 7 *Moore's Federal Practice,* Paragraph 60.18[8] at 60–139; *Sebastiano v. United States,* 103 F.Supp. 278 (N.D. Ohio 1951), so the procedural choice of using the motion format need not be fatal to a claim under the independent action provision.

**8.** It appears clear that relief under the first clause is available to any party to an action, as evidenced by the difference in language be-

tween the parallel provisions of the first and second clauses. It further appears that relief under the third clause is likewise available to any party, *See e.g., Photzer v. Amercoat Corp.,* 548 F.2d 51 (2nd Cir.1977), and may be raised by any party, or a non-party, or by the court on its own motion. *See* 7 *Moore's Federal Practice,* Paragraph 60.33 at 60–354. The court does not hold that relief under rule 60(b) is unavailable to a plaintiff or to a successful litigant.

the courts which had not been superseded by the rule, but does not define those powers. That language does, however, appear to follow the case law in this area. The most liberal discussion this court has discovered of the remedies available for fraud upon the court is found in *Hazel–Atlas Glass Co.*, 322 U.S. at 245, 64 S.Ct. at 1001, 88 L.Ed. at 1255:

> Litigants who have sought to invoke this equity power customarily have done so by bills of review or bills in the nature of bills of review, or by original proceedings to enjoin enforcement of a judgment. And in cases where courts have exercised the power the relief granted has taken several forms: setting aside the judgment to permit a new trial, *altering the terms of the judgment*, or restraining the beneficiaries of the judgment from taking any benefit whatever from it. *But whatever the form the relief has taken in particular cases, the net result in every case has been the same: where the situation has required the court has, in some manner, devitalized the judgment* even though the term at which it was entered had long since passed away. (emphasis added).

The court is aware of no case in which the reviewing court has granted relief beyond that described in *Hazel–Atlas Glass*.[9] The court notes that devitalizing the judgment in the instant case would only inure to the benefit of the purported wrongdoers, and would not be in the plaintiff's favor. Given the options remaining open to the plaintiff,[10] this court does not find such a

dramatic extension of traditional remedies as plaintiff seeks to be warranted. As Justice Roberts stated in his dissent in *Hazel–Atlas Glass*, at 252, 64 S.Ct. at 1004, 88 L.Ed. at 1259, "[w]e should not resort to a disorderly remedy, ... in order to reach one inequity at the risk of perpetrating another."[11]

### III

#### *Motion to Add Third Party Defendants to Judgment*

Plaintiff further seeks to add, pursuant to Federal Rules of Civil Procedure 15(c) and 21, the three above-named subsidiaries of Star Brite Corporation, and also Peter Dornau, president of the judgment debtor and the three subsidiaries. Plaintiff cites *Fromson v. Citiplate, Inc.*, 10 U.S.P.Q. 2d (BNA) 1785 (S.D.N.Y.1989), and asks this court to add Dornau individually directly to the judgment, as the New York District Court had done in *Fromson*. In *Fromson*, the corporation's two directors and officers, Charles and Joseph Cusumano, had been the subject of a rule 15(c) motion prior to trial, based on rumors of the corporation's financial difficulties. The Cusumanos, through counsel, successfully opposed the motion with an affidavit from the corporation's director of finance, stating that the rumors were false and that he expected the corporation would be able to pay a multi-million dollar judgment. When, after judgment was entered, the corporation threatened bankruptcy if plaintiff attempted to collect more than a portion of the $4½ million judgment, the court added the Cu-

---

9. *But see Fromson v. Citiplate, Inc.*, 10 U.S.P.Q. 2d (BNA) 1785, 1989 WL 10584 (S.D.N.Y.1989) (utilizing rule 15(c) to join parties defendant to a final judgment) (discussed infra.)

10. Plaintiff still has available to him use of the theory of corporate disregard, which may be raised in an action to enforce his judgment against the assets of the subsidiaries or as a counterclaim in the action brought against him which arises out of such an attempt. Plaintiff may also bring a separate action or counterclaim for fraud arising out of the activities in this court of Peter Dornau on behalf of Star Brite Corporation and its subsidiaries. Plaintiff also may attach the assets of the parent corporation, including all shares in the three wholly

owned subsidiaries, as well as funds in the hands of the subsidiaries which are due the parent as licensor of the products which they produce. The court does not hereby indicate any opinion regarding the merits of such claims, but rather notes their existence. Nothing in this opinion shall be construed so as to limit plaintiff's right to bring any such causes of action.

11. Nothing in this opinion denying plaintiff relief, should be read as dispositive of the question of fraud upon the court. This court may vindicate its own prerogatives by consideration of that issue at some later date. The court herein merely considers the plaintiff's motion for relief.

sumanos as parties directly to the judgment.

This court has previously alluded to due process concerns in adding a party to a judgment. These concerns apply with equal force in the circumstance. *Fromson* is remarkably similar to the case at bar, and yet is distinguishable therefrom. The *Fromson* court took its action within one year of the judgment. Though not stated in those terms, it appears that the district court may have acted pursuant to one of the enumerated motions under rule 60(b), perhaps 60(b)(3), and modified his ruling on the prior rule 15 motion, which had been made final by the entry of the judgment. Such would be a procedural option not available to this court. Furthermore, the Cusumanos were put on notice prior to the trial of the claims against them, but chose not to become parties to the action, and thus protect their interest; such action by the Cusumanos would affect the rule 15(c) consideration of prejudice to the parties added, and would also affect the court's due process analysis. Peter Dornau has made no such choice in the instant actions; there has been no comparable positive action which could be construed as a waiver. Finally, plaintiff knew well before the entry of judgment that Dornau was involved in the infringement, as president of the defendant corporation. There was no mistake as to the identity of the responsible officer. Dornau thus had no reason to know that "but for a mistake concerning the identity of the proper party, the action would have been brought against" him.

It appears possible, but highly uncommon, for a rule 15(c) motion to be granted—or even made—after the trial of a case, and still less common after judgment, *see* 59 Am.Jur.2d § 200; *see also Fromson, supra,* and rare indeed after appeal. *See* 3 *Moore's Federal Practice,* Paragraph 15.-11. Under the facts here present, the court cannot say that Peter Dornau and the subsidiaries would not be prejudiced should the court grant plaintiff's motion at this late date. Nor, as to Dornau, can the court find that he should have known that, but for a mistake concerning his identity as a proper party, he would have been sued.

Finally, the court has unanswered concerns about the due process implications of granting plaintiff's motions to add these parties. Nor would the terms proposed by plaintiff be just within the meaning of rule 21. As to the possibility of adding these parties to the action rather than to the judgment—a possibility not raised expressly by the plaintiff—for purposes of pursuing separate remedies such as are listed *supra,* at footnote 10, the court is of the opinion that such matters would not be barred by the running of the applicable limitations periods, and thus "relation back" would be unnecessary. Allowing such an unnecessary amendment would require reopening a case after judgment and appeal on matters only tangentially related to the original infringement action, and involving only parties not already in the action. The court declines to amend the complaint to add these parties to the action.

## IV

### Post–Judgment Interest

In reviewing the judgment in the case *sub judice,* the court has noted that the judgment entered by this court on August 4, 1987 does not contain a provision for the award of post-judgment interest. Such an award is required to be "allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). (1982 & Supp.1989) (as amended). Under Federal Rules of Civil Procedure 60(a), this court has the authority to correct an error in its judgment "at any time of its own initiative ... and after such notice, if any, as the court orders." The unintentional failure to include an award of interest in a judgment may be corrected by means of Rule 60(a). 6 A *Moore's Federal Practice,* Paragraph 60.06[4] at page 60–52; *citing Aldon Industries, Inc. v. Don Myers & Assoc., Inc.,* 547 F.2d 924 (5th Cir.1977).

It is the long-standing practice of this court to include an express award of post-judgment interest in all judgments it renders for money damages in civil cases; this practice obtains whether proposed judgments have been submitted by the parties

or not. It was not the intention of this court that post-judgment interest be withheld—there had been no discussion of such a step, nor were there grounds to contravene the authority of 28 U.S.C. § 1961(a).

Notice and hearing may be required on the issue of whether or not the omission was in fact a clerical error, but only here the error is not apparent on the face of the record. 6 A *Moore's Federal Practice*, Paragraph 60.07 at page 60–59. As the judgment was entered by this court, which knows the circumstances under which it was entered and with which intent, testimony from the parties would serve no useful purpose. Given this court's authority and control over the forms of judgment, the fact that the court adopted as its judgment the proposed judgment submitted by plaintiff's attorney does not alter that conclusion. The parties could, at best, refresh the court's recollection of grounds raised and argued at trial which prompted an intentional omission of post-judgment interest from the judgment; the court, however, has before it the transcript of the trial of this cause, and copies of all pleadings and correspondence from the parties, and has discovered no indication that either party, let alone the court itself, intended the omission. It is clear that this court's omission of an express award of post-judgment interest was unintentional, the result of oversight.

An appeal has already been taken and the judgment affirmed; the court should nonetheless have the power to correct clerical mistakes. This is particularly true where the cause is remanded for further proceedings, but applies as well where the appellate court finally disposed of the action. 6 A *Moore's Federal Practice*, Paragraph 60.08[3] at page 60–58.

The rate of interest is to be "equal to the coupon issue yield equivalent ... of the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled *immediately prior to the date of the judgment.*" (emphasis added). 28 U.S.C. § 1961(a). An auction was held on the same date the judgment was entered, August 4, 1987. A liberal reading of the statute leads to the conclusion that the auction price in effect prior to that date should be used; such a practice would also follow the most likely practice had interest properly and timely been ordered. Accordingly, this court adopts an interest rate of 6.64 percent per annum, in effect as of the auction held July 2, 1987.

The court is of the opinion that plaintiff's post-judgment motions—for entry of contempt, for alteration of the judgment, and for addition of the parties to the judgment—are not well taken and that the same should be denied.

An order in conformity with this opinion shall issue.