**IMAGINEERING, INC., Plaintiff,**

v.

**VAN KLASSENS, INC. and Robert Lukingbeal, Defendants.**

**No. 92 Civ. 0751 (RLC).**

United States District Court, S.D. New York.

April 6, 1994.

Heslin & Rothenberg, P.C., Albany, NY, for plaintiff (Susan F. Gullotti and Nicholas Mesiti, of counsel).

Robinson Brog Leinwand Reich Genovese & Gluck, P.C., New York City, (David C. Burger, of counsel) and Pitts & Brittian, Knoxville, TN (Robert E. Pitts and Raymond E. Stephens, of counsel), for defendants Van Klassens, Inc. and Robert Lukingbeal.

Law Offices of Neal J. Hurwitz, New York City, for defendant Caroline Lukingbeal (Douglas F. Eaton, of counsel).

## OPINION

ROBERT L. CARTER, District Judge.

The background of this trade dress infringement case involving rival manufacturers of garden furniture, Imagineering, Inc. ("Imagineering") and Van Klassens, Inc. ("Van Klassens"), is set forth in opinions issued September 4, 1992 and March 30, 1994, with which familiarity is assumed. The sole matter currently before the court is Imagineering's motion, pursuant to Rules 15(a) and 21, F.R.Civ.P., to amend its complaint to join Caroline Lukingbeal as an individual defendant and to find her jointly and severally liable for the damages already assessed against defendants, Van Klassens and Robert Lukingbeal. Plaintiff asserts that if Caroline Lukingbeal is not joined as a party, Imagineering will be unable to collect its judgment because Robert Lukingbeal will shield assets by placing them in Caroline's name or by holding them as marital property.

I.

In general, leave to amend a pleading pursuant to Rule 15(a), F.R.Civ.P. should be freely granted. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, a court is justified in denying a motion to amend where the moving party has unduly delayed filing the motion or the opposing party would be unduly prejudiced if the amendment were allowed. *Id.*

Caroline contends that Imagineering unduly delayed in seeking to add her as a defendant because it did not file a motion until three months after the jury's verdict, even

though it could have done so earlier, and that she was unduly prejudiced as a result. Imagineering claims that it did not know the true extent of Lukingbeal's involvement with Van Klassens, and so could not in good faith have sought to add her as a defendant until after her trial testimony. Further, it claims that it did not move to join Caroline until now because it was pursuing settlement discussions with defendants.

▮ Plaintiff claims that it first learned about the nature of Caroline Lukingbeal's relationship with Van Klassens in October, 1992, when, in response to interrogatories, Caroline was identified as 1) an officer, director and 50% shareholder of Van Klassens and 2) one of the two persons (Robert Lukingbeal being the other one) most knowledgeable about the selection of Van Klassens's trade dress. In December, 1992, according to plaintiff, Imagineering "inquired" of defendants whether it would object to a motion to join Caroline, (Pl.'s Reply Mem. in Supp. to Join C. Lukingbeal at 11), and when defendants replied that they would challenge any such motion, plaintiff, unsure of the extent of Lukingbeal's involvement with Van Klassens's infringing activities, decided against pursuing the motion. Even after Caroline Lukingbeal's deposition in April, 1993, Imagineering claims that it could conclude only that she assisted her husband in some company activities, and not that she played a role active enough to justify naming her as a defendant.

According to plaintiff, Caroline Lukingbeal's trial testimony significantly altered this impression, by providing new information regarding her authority over the design of Van Klassens's furniture, her involvement in the advertising process at the company, her work on tax-related matters, and her trip to Cawdor Castle in 1964 (the "cover-up" story of the furniture's origins). Imagineering claims that only following this testimony did sufficient grounds exist to move to join Robert Lukingbeal's wife, Caroline.

However, the court finds that a sufficiently clear sense of Caroline's involvement with Van Klassens's infringing activities was available by the close of discovery. First, with respect to the design of Van Klassens's furniture, her husband testified at his deposition that his wife was the "ultimate test" of a design, and that if she didn't like a design, "it doesn't happen generally." (R. Lukingbeal Dep. at 258–59.) Further, Timothy Hester, a Van Klassens's employee, testified that the "final approval" of a design belonged to Caroline Lukingbeal. (Hester Dep. at 126.) At her deposition, Caroline herself testified that her husband would "usually" consult with her if he had a "major" aesthetic design question, and that she and Robert "together" decided whether to make a new piece of furniture. (C. Lukingbeal Dep. at 97 & 129.)

Caroline Lukingbeal also testified that she and her husband had always worked on Van Klassens's advertisements together, (id. at 99), and that, although her husband "drafted" most of the ad copy, she "proofread" it. (Id. at 102.) She testified that she was "more of the aesthetic person," (id. at 128), and so was not involved in taking phone orders, hiring and firing employees, or the "manufacturing end" of the business generally. (Id. at 103–04). She also indicated that she and Robert shared bookkeeping responsibilities, and that she specifically took care of FICA, money "that had to be deposited every month," and information that was given to the accountant on a quarterly basis. (Id. at 104.) Finally, she testified that she and her husband visited Cawdor Castle in Scotland in 1964, which provided the inspiration for the design of Van Klassens's curved settee. (Id. at 71.)

At trial, Caroline's testimony may have been more emphatic, but it did not reveal much additional information. In response to a question about the design process, she testified that

"the design process took place at home. We'd talked about it at breakfast, or whenever we could, and [Robert] would ... just put things together and we'd—I'd look at it and see if it looked right. If it didn't look right, we would change it." (Trial Tr. at 1077–78.)

Caroline also testified that "if I saw something wrong, they learned about it," and that she had "veto power" over designs. (Id. at 1122 & 1124.) She said that she filed the tax forms for Tennessee on a monthly or quar-

terly basis, (*Id.* at 1084), and when asked whether she "supervised or at least proofread" a particular advertisement, she responded "part of it, not all of it." [1] (*Id.* at 1122.)

Finally, Caroline repeated her story about the trip to Cawdor Castle and admitted to at least knowing about, although she claimed that she could not remember how Van Klassens obtained, a Weatherend® catalog. (*Id.* at 1101 and 1129–30.) However, this testimony seems only to show that Van Klassens did indeed have a copy of the Weatherend® catalog—which plaintiff knew prior to trial—and to raise the specter of Lukingbeal's involvement in its procurement—which plaintiff must clearly have suspected. Moreover, while plaintiff's expert witness thoroughly discredited Caroline's testimony about the Cawdor Castle trip, plaintiff necessarily knew the substance of the expert testimony prior to trial, and so had reason to doubt Lukingbeal's veracity on this subject even then.

The court, therefore, disagrees with plaintiff that the picture that emerged at the trial of Caroline Lukingbeal's involvement with Van Klassens's infringing activities differs significantly from that which was available at the close of discovery. But, even if the court were to accept plaintiff's claim that it could not in good faith have sought to name Caroline Lukingbeal as a defendant until she testified, Imagineering offers no explanation why it failed to do so at that time. The additional delay deprived Caroline Lukingbeal of the opportunity to present a closing argument on her behalf and to have her claim expressly considered by the jury, and so it prejudiced her in a way both significant and avoidable. That she actively participated in the trial as the representative of Van Klassens does not alter the fact that neither defendants' counsel, plaintiff's counsel nor the jury ever addressed the issue of her personal liability for the actions of Van Klassens. *Accord Eakins v. Reed,* 710 F.2d 184, 187 (4th Cir.1983) (paramount among rights of person to be joined is opportunity to be heard " 'at a meaningful time and in a meaningful manner' ").

Plaintiff relies very heavily upon *Fromson v. Citiplate Inc.,* 10 U.S.P.Q.2d 1785, 1787, 1989 WL 10584 (E.D.N.Y.1989), *aff'd,* 886 F.2d 1300 (Fed.Cir.1989), in which the court joined two individual defendants—Joseph and Charles Cusumano—directly to a multi-million dollar judgment. In *Fromson,* plaintiff, having heard rumors of defendant's financial difficulties, moved to join the Cusumanos (defendant's two officers, directors and shareholders) shortly before trial, but the court denied the motion based upon representations by Citiplate's finance director as to the company's good financial health. Following a non-jury trial that found Citiplate liable for money damages, when Fromson sought to collect its judgment, Citiplate filed for bankruptcy protection. Fromson renewed his motion, and the court joined the Cusumanos and found them liable.

On appeal, the Federal Circuit affirmed, based on the Cusumanos open involvement with Citiplate's infringing activities, and their knowledge that Fromson had previously sought, and they had resisted, joinder. 886 F.2d at 1304. The circuit court found that the Cusumanos were not being deprived of a jury trial because first, they had earlier waived such a right on behalf of Citiplate, and, second, if they had previously permitted themselves to be named as defendants, they could have chosen a jury trial at such time. *Id.* Therefore, the situation being of their own making, the Cusumanos would be required to suffer any adverse consequences as a result. *Id.*

Unlike *Fromson,* Imagineering, by its own admission, only "inquired" as to the possibility of joinder, making it much harder for plaintiff to claim that Caroline Lukingbeal was on notice of the possibility of personal liability. Further, defendants' claim that they would object to plaintiff's motion seems little more than posturing, and is an insufficient basis for plaintiff to base a claim that Caroline had the opportunity to agree to be joined. Finally, the court is unaware of any

---

**1.** Plaintiff has referred the court to no other excerpts of Caroline Lukingbeal's testimony in support of their claim.

actions taken by Caroline Lukingbeal to waive a jury trial on behalf of Van Klassens or herself.[2] *Accord Star Brite Distributing, Inc. v. Gavin,* 746 F.Supp. 633, 651 (N.D.Miss.1990) (denying post-trial joinder motion where individual defendant lacked notice of claim against him and plaintiff knew of involvement prior to trial).

*Fromson,* therefore, is distinguishable, and, despite the testimony displaying Caroline Lukingbeal's extensive involvement in Van Klassens's activities, plaintiff has failed to persuade the court either that it could not have filed its motion before the case went to the jury or that Caroline would not be prejudiced were the motion to be granted now. Therefore, plaintiff's motion to amend its complaint to add Caroline Lukingbeal as a defendant is denied.

**IT IS SO ORDERED.**

2. Imagineering claims that the facts warrant judgment as a matter of law against Caroline Lukingbeal. However, there exists no undisputed factual record available to the court upon which to base such a decision. To ask the court, as plaintiff does, to search the record, would transform the court into the finder of fact which, in this case, was properly the jury's role. Further, Imagineering argues that Caroline Lukingbeal would not be entitled to a jury trial on her personal liability in any event because she actively participated in the trial of defendants. As noted above, however, there is a difference between appearing as a representative of a corporate defendant and being tried personally.

Further, despite plaintiff's assertion, the court fails to see how collateral estoppel would preclude Caroline Lukingbeal from obtaining a jury trial on the issue of her personal liability. Without making any decision as to what issues the parties might be precluded from relitigating in a subsequent trial, it is apparent that the issue of Caroline's personal liability was neither actually litigated nor was the determination of this issue necessary to the outcome of the trial. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) (doctrine of collateral estoppel precludes relitigation of issues of fact or law which have been actually litigated and whose determination was necessary to outcome of first action).